## UNITED STATES of America, Plaintiff-Appellee,

v.

## Kenneth COHEN, Defendant-Appellant.

### No. 75–2407.

United States Court of Appeals, Fifth Circuit.

April 15, 1976.

As Amended on Denial of Rehearing June 1, 1976.

J. Russell Hornsby, James M. Campbell, Orlando, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Robert A. Leventhal, Harrison T. Slaughter, Jr., Asst. U. S. Attys., Orlando, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and GEE, Circuit Judges.

GEE, Circuit Judge:

Appellant Cohen challenges his conviction under 21 U.S.C. §§ 841(a)(1), 846 (1970) for conspiring to distribute illegal drugs on the following grounds: (1) evidence obtained by the government through a court-ordered wiretap should have been suppressed; (2) the prosecution failed to prove him sane beyond a reasonable doubt; (3) the court erred in requiring him to waive his physician-patient privilege and name all his treating physicians and psychiatrists; (4) the court violated his privilege against self-incrimination by ordering him to submit to examination by two psychiatrists selected by the government after he announced his intention of relying on an insanity defense and denied his right to counsel by refusing his request to have an attorney present during the examination; and (5) the court erred in replacing a disqualified juror with an alternate after the jury had been instructed to leave the courtroom to begin deliberations. Finding these contentions without merit, we affirm.

## I. *Wiretap*

Appellant claims that the court should have suppressed tape recordings and transcripts of those recordings obtained through a court-ordered wiretap because contrary to federal[1] and state statute[2] the wiretap authorization was neither supported by probable cause nor sufficiently limited in purpose and duration, and the recordings obtained through the wiretap were not immediately made available to the issuing judge upon termination of the wiretap. These contentions are without merit. First, the affidavit, which relies partly on the affiant's firsthand knowledge and partly on information provided by a confidential informant, supplies sufficient facts to satisfy the statutory requirement of probable cause, as defined in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Second, the authorized purpose of the wiretap—to intercept "any and all conversations having discussions related to or concerning sale, possession, smuggling, or unauthorized trafficking in narcotics and dangerous drugs, in violation of Chapter 893, Florida Statutes," meets the statutory requirement of sufficient specificity, since we agree with the Second Circuit that

> a pragmatic approach has been taken with respect to the particularity requirement [after surveying cases]. A specific crime or a specific series of related crimes must be identified. Although the nature and type of the anticipated conversations must be described, the actual content need not and cannot be stated since the conversations have not yet taken place at the time the application is made and it is virtually impossible for an applicant to predict exactly what will be said concerning a specific crime. . . . The order must be broad enough to allow interception of any statements concerning a specified pattern of

---

1. 18 U.S.C. § 2518(3), (4)(c), (5), (8)(a) (1970).

2. Fla.Stat. § 934.09(3), (4)(c), (5), (7) (1973).

crime. In determining whether the order and application are sufficiently particular, the papers as a whole must be considered, including especially those portions which recite facts intended to establish probable cause.

.  .  . We have carefully reviewed all the applications. We are satisfied that none of them disclosed an improper intention on the part of the applicant to secure a roving commission.

United States v. Tortorello, 480 F.2d 764, 780–81 (2d Cir.), cert. denied, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973). Third, the provision in the intercept order that "[s]aid interception shall not automatically terminate  .  .  ., but shall continue until communications are intercepted which reveal the details of the scheme which have been used to violate the [state laws], and the participants and nature of the conspiracy involved therein, or for a period of 30 days from the date of this order, whichever is earlier," fulfills the statutory requirement that an order be limited to the period necessary to achieve the objective of the authorization but in no event longer than thirty days. Finally, although the authorizing judge received the tapes of the wiretapped conversations five weeks after termination of the wiretap when the tapes had been transcribed, instead of immediately as required by statute, the parties stipulated to facts showing chain of custody and a lack of alteration of the tapes. Although the better procedure would have been to deliver the tapes immediately to the judge and have him release them for transcription, in view of the proof about both custody and the absence of tampering, we find no violation. See United States v. Sklaroff, 506 F.2d 837, 840 (5th Cir. 1975).

## II.  Proof of Sanity

■ Defendant insists that the prosecution failed to prove sanity beyond a reasonable doubt. Although there was conflicting expert testimony and some lay testimony pointed to appellant's history of mental problems,[3] defendant's expert psychiatrist testified that the kind of disorder suffered by defendant was subject to periods of time when the accused could "appreciate the wrongfulness of his conduct and conform to the requirements of the law," which satisfies this circuit's definition of sanity. See Blake v. United States, 407 F.2d 908, 916 (5th Cir. 1969) (en banc). Furthermore, both of the prosecution's experts testified, based on recorded conversations, that appellant was sane during the period in question and knew the difference between right and wrong. And significantly, there was testimony that around this time appellant had stated that selling cocaine was wrong. Taking the view most favorable to the government, we think that there is substantial evidence[4] of sanity at the time of the offense to support the verdict.

## III.  Waiver of Physician-Patient Privilege

■ Before trial the defense attorney announced that he intended to argue for an insanity defense and to use certain psychiatrists as witnesses, but as trial approached he was unable to obtain reports from those doctors pursuant to the court's order for reciprocal discovery. The court required appellant to execute a waiver of any physician-client privilege he might have because appellant's psychiatrists would not deal directly with the prosecution for fear of violating a Florida statute[5] recognizing a patient-psychiatrist privilege, even though the

3. Several lay witnesses described appellant's childhood mental problems, and at least one testified that appellant was not rational during the month that he committed the offense.

4. See United States v. McCracken, 488 F.2d 406, 412 (5th Cir. 1974) (substantial evidence

is "evidence that a reasonably minded jury could accept as adequate and sufficient to support the conclusion of the defendant's guilt [or sanity] beyond a reasonable doubt").

5. Fla.Stat. § 90.242 (Supp.1975).

statute excepts all materials when the patient raises an insanity defense in a criminal prosecution.[6] Appellant claims that this waiver and the requirement that he furnish the names of his doctors to the prosecution exceeded the scope of Rule 16(c),[7] Fed.R.Crim.P., which authorizes government inspection only of material medical reports that a defendant intends to produce at trial and that are within his possession, custody, or control. But Rule 16(g)[8] gives the court discretion to enter any order it considers "just under the circumstances" when a party fails to comply with a discovery order issued pursuant to Rule 16. Given the failure by appellant's attorney to comply with the court's reciprocal discovery order, we find no abuse of the court's Rule 16(g) discretion.

## IV. Compelled Psychiatric Examination

Appellant argues first, that since insanity negates an element of the crime, the lower court's order forcing him to submit to an examination by psychiatrists selected by the government to determine his sanity at the time of the commission of the crime violated his privilege against self-incrimination and second, that he was entitled to an attorney during the examination. This circuit has often recognized a district court's inherent authority to admit psychiatric testimony about a defendant's mental condition at the time of the commission of the offense based on information obtained at an examination ordered pursuant to 18 U.S.C. § 4244 (1970) to determine the accused's capacity to stand trial,[9] although we have never reached the issue of whether a defendant's privilege against self-incrimination is violated per se by a court-ordered psychiatric examination solely to determine the accused's mental condition at the time of the commission of the offense. Several other circuits have rejected this unconstitutionality-per-se argument on various grounds,[10] while one has indicated approval of it.[11] Relying on a balancing test,[12] we choose to follow the former line of cases and permit compelled psychiatric examinations when a defendant has raised the insanity defense. Since any statement about the offense itself could be suppressed,[13] a rule forbidding compelled examinations would prevent

6. *Id.* § (3)(b).

7. Rule 16 was amended, effective December 1, 1975, to provide greater discovery to both prosecution and defense. Trial in this case was governed by the pre-1975 rule.

8. *See* note 7 *supra.*

9. *See, e. g., United States v. McCracken*, 488 F.2d 406, 411 n. 3 (5th Cir. 1974) (psychiatrist appointed to determine defendant's sanity both at time of trial and at time of commission of the offense); *United States v. Jacquillon*, 469 F.2d 380, 389 (5th Cir. 1972), *cert. denied*, 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973) (psychiatrist appointed to determine defendant's sanity at time of trial permitted to testify about defendant's sanity at time of the offense); *United States v. Moudy*, 462 F.2d 694, 697 (5th Cir. 1972) (same as *McCracken*).

10. *United States v. Albright*, 388 F.2d 719 (4th Cir. 1968) (the examination determines not guilt but capacity to be guilty; the underlying purposes of the constitutional privilege are furthered by compelling an examination; and government necessity demands an examination); *Pope v. United States*, 372 F.2d 710, 720–21 (8th Cir. 1967), *vacated and remanded on other grounds*, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968) (whether explained as waiver of privilege against self-incrimination or lack of fundamental fairness is irrelevant).

11. *United States v. Alvarez*, 519 F.2d 1036, 1042 (3d Cir. 1975) (since this circuit has held that sanity goes to guilt or innocence and thus must be proved beyond a reasonable doubt, statements elicited in a compelled examination appear to be self-incrimination). One state court has so held on the ground that only carefully drafted legislation can provide procedures that will adequately protect a defendant required to submit to an examination from the grave danger of self-incrimination. *State v. Olson*, 274 Minn. 225, 143 N.W.2d 69 (1966).

12. *Accord, United States v. Bohle*, 445 F.2d 54, 66 (7th Cir. 1971).

13. As other circuits have done. *See, e. g., United States v. Bohle*, 445 F.2d 54, 66–67 (7th Cir. 1971); *United States v. Baird*, 414 F.2d 700, 710–11 (2d Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970). *See also* 18 U.S.C. § 4244 (incriminating statements made during examination to determine defendant's competence to stand trial are inadmissible).

no threatened evil, and the government will seldom have a satisfactory method of meeting defendant's proof on the issue of sanity except by the testimony of a psychiatrist it selects—including, perhaps, the testimony of psychiatric experts offered by him—who has had the opportunity to form a reliable opinion by examining the accused.[14] To hold that compelled psychiatric examinations are forbidden because sanity is an element of the offense and that the privilege against self-incrimination prohibits compulsory elicitation of statements going to an element of the offense would be confining ourselves within an analytical prison. Given the defendant's power to have any incriminating factual statements resulting from the examination suppressed, we think the proper analogy is to the required furnishing of handwriting exemplars by the defendant and similar procedures.

▮ Likewise, we reject appellant's claim of a constitutional right to have an attorney present at the psychiatric examination since that might defeat the purpose of the examination[15] and since the examination is not the kind of critical stage at which assistance of counsel is needed or even useful.[16] There would

be no need for counsel to instruct the accused not to answer questions for fear of factual self-incrimination, for any such matter is subject to suppression; and interference with the examination by counsel on other grounds would be improper.

## V. *Juror Substitution*

▮ Immediately after the district judge completed his instructions and ordered the jury to retire, attorney for appellant's co-defendant objected that one juror had slept during instructions. The court recalled the jury, which had been kept waiting in a hallway outside the courtroom, questioned the "sleeping juror," and replaced him with an alternate. Appellant insists that this procedure violated Rule 24(c), Fed.R.Crim.P., which permits replacement of disqualified jurors with alternates "prior to the time the jury retires to consider its verdict." Appellant's interpretation is too formalistic. Although the jury had been ordered to retire, it had not yet done so because the jurors had never begun their deliberations. We find no violation of the rule.

AFFIRMED.

14. *See United States v. Albright*, 388 F.2d 719, 724–25 (4th Cir. 1968) (a lengthy personal interview is the only effective means of ascertaining sanity). The D. C. Circuit's suggestion in *Thornton v. Corcoran*, 132 U.S.App. D.C. 232, 407 F.2d 695, 700 (1969), that *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), may invalidate the government-burden argument by emphasizing that the government must prove its own case from uncoerced evidence ignores the near impossibility of proving sanity without a statement from the defendant. Nor is a psychiatric exam inherently coercive in the same sense that an involuntary confession is.

15. *Accord, United States v. Bohle*, 445 F.2d 54, 67 (7th Cir. 1971); *United States v. Baird*, 414

F.2d 700, 711 (2d Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970); *United States v. Albright*, 388 F.2d 719, 726–27 (4th Cir. 1968). *But see Thornton v. Corcoran*, 132 U.S.App.D.C. 232, 407 F.2d 695, 698–702 (1969).

16. *See United States v. Baird*, 414 F.2d 700, 711 (2d Cir. 1969), *cert. denied, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970) (it is not a critical stage when the accused's statements, if not admissible on the issue of guilt or innocence or committing the offense, are treated only as verbal acts from which the expert's opinion is drawn).