735 A.2d 1109

**John Edward HAYES**

v.

**STATE of Maryland.**

**No. 153, Sept. Term, 1998.**

Court of Appeals of Maryland.

Aug. 27, 1999.

Nancy S. Forster, Assistant Public Defender (Stephen E. Harris, Public Defender, Gina M. Serra, Assistant Attorney General, on brief), Baltimore, for petitioner.

Sarah Page Pritzlaff, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI (retired, specially assigned), JJ.

WILNER, Judge.

Petitioner, John Hayes, was convicted by a jury in the Circuit Court for Baltimore County of robbery with a deadly weapon, use of a handgun in the commission of a crime of

violence, and related offenses, for which he was sentenced to a total of 25 years in prison. The Court of Special Appeals affirmed the judgment. *Hayes v. State,* 123 Md.App. 558, 720 A.2d 6 (1998). The single issue before us is whether the trial court erred in replacing a regular juror with an alternate juror after (1) the jury had left the courtroom to begin deliberations, and (2) the alternate juror had been excused by the court but had not yet left the courthouse. On the record in this case, we conclude that the court did err, and we shall therefore reverse the contrary judgment of the Court of Special Appeals.

## *BACKGROUND*

The underlying facts of the case are not relevant to the issue before us and need not, therefore, be recounted. All that is important is what occurred in the courtroom following closing arguments. Immediately upon the conclusion of the State's rebuttal argument, the judge informed the alternate juror that, "because we have twelve able bodied jurors, as it turns out, your services will not be required for the balance of the case." The judge thanked the alternate juror for his services, directed him to retrieve any belongings he had in the jury room, and said that "then you are excused with our sincere thanks." The judge then informed the remaining jurors that they may retire to the jury room—"[t]he jury may retire to deliberate upon the verdict with the notes, the evidence and the tape recorded instructions," following which the transcript shows "(Jury excused)." The record does not indicate what time it was when the jury was excused.

Prior to the court going into recess, defense counsel asked that the jurors be given a hard copy of the judge's instructions, which the court said was not possible, and renewed his motion for judgment of acquittal which, after some argument, the court denied. The court then went into recess, although, again, the time was not recorded.

The transcript next shows:

"THE COURT: The record will indicate it is three minutes before one, approximately. The defendant has been returned to the courtroom.

Mr. Hayes, we have, as soon as the jury left and were to begin deliberations, one of the jurors, specifically number ten, indicated she was ill.

The alternate, although excused, had not left the building and is also available. So before we begin deliberations, it is my intention to excuse juror number ten and substitute the alternate.

I want you to be aware of that. I think it is necessary for us to do that because of the illness of the juror.

Do you understand, sir?

THE DEFENDANT: Yes."

Defense counsel objected, noting that the juror had "sat there all morning" and "was not obviously, evidently ill," that she "was able to listen attentively and did not interrupt the proceeding or in any way seem to have to tend to her illness, blow her nose or anything like that." He added, "I don't think any of us had any idea she was feeling under the weather." The court responded:

"She indicated earlier. I happened to see her, she came into chambers, and I said, can I help you, and she said, I am taken care of.

But apparently they were heating tea for her in the earlier break. She was not feeling well. She had stomach problems or something. So it is not brand new."

Counsel renewed his objection, but the court ruled that "[t]he alternate will be substituted for juror ten and deliberations will now be begun. They have not yet begun."

The newly constituted jury returned a conviction and Hayes appealed, presenting the argument that (1) an alternate juror may not be substituted after the jury retires to deliberate, (2) juror number ten should, in any event, have been questioned to determine whether her dismissal was warranted, (3) the alternate juror should have been examined to determine

whether he had been tainted after being excused, and (4) the error was not harmless.

With respect to the main issue, of whether the court had the authority to substitute the alternate, the Court of Special Appeals noted that, under Maryland Rule 4–312(b)(3), an alternate juror may not be substituted for a regular juror after the jury "retires to consider its verdict." That rule, it held, was similar to Federal Rule of Criminal Procedure 24(c), and the court looked to several Federal cases interpreting the Federal rule. Under those cases, the court held, the phrase "retires to consider its verdict" contemplates "the actual commencement of deliberations." *Hayes, supra*, 123 Md.App. at 573, 720 A.2d at 14. In this case, the court continued, the trial judge expressly found that deliberations had not yet commenced; *ergo*, no error.

As part of his argument, Hayes contended that there were other options potentially available to the trial court, such as declaring a mistrial, proceeding with eleven jurors, or recessing court until the next day, to see if the ailing juror recovered. The Court of Special Appeals held that, as that argument had not been presented to the trial court, it was not preserved for appellate review and that, in any event, the choice among the options was a matter within the trial court's discretion. The appellate court agreed that "the better practice would have been to question the juror on the record" but found that the judge's prior contacts with the juror constituted a sufficient basis for him to conclude that the juror was, indeed, ill and unable to continue. *Id.* at 578, 720 A.2d at 16. Finally, as to the third point, the court held that, not only did Hayes omit to ask that the trial court examine the alternate juror but that his objection went only to the discharge of juror number ten and not to the substitution of the alternate juror, and, for those reasons, was unpreserved.

## DISCUSSION

Three sub-issues are presented in Hayes's argument concerning the substitution of the alternate juror: (1) at what

point, for purposes of Md. Rule 4–312(b)(3), is the jury considered to have "retire[d] to consider its verdict"; (2) may a person who was an alternate juror be substituted for a juror after that person has been excused as an alternate juror, and, if so, under what circumstances; and (3) when an objection is made to the contemplated substitution of an alternate juror in this setting, is it incumbent upon the defendant to suggest a procedure for the court to follow in order to preserve the full force of the objection? These sub-issues coalesce, however, and we shall deal with them together.

### The Meaning Of Rule 4–312(b)(3)

The use of alternate jurors was not part of the common law tradition. As described by Judge Gilbert for the Court of Special Appeals in *James v. State,* 14 Md.App. 689, 699–700, 288 A.2d 644, 650 (1972):

> "At common law, according to the established precedents, when, during a trial, a defect in jurors occurred because of the death, illness, or misconduct of a juror or other cause necessitating his discharge, the practice was to discharge the entire jury and begin *de novo* by forming a new jury panel. Eleven of the twelve discharged jurors were immediately recalled, an alternate juror was seated, replacing the excused juror, thus completing the twelve. The new jury was then impaneled *de novo,* allowing the full number of challenges with respect to the eleven jurors recalled, as well as with respect to the new juror."

*See also* David B. Sweet, *Propriety, under State Statute or Court Rule, of Substituting State Trial Juror with Alternate after Case Has Been Submitted to Jury,* 88 A.L.R.4th 711, 720 (1991).

To remedy the problems engendered by that practice, Congress, in 1932, authorized the selection and retention of alternate jurors in Federal criminal cases whenever the trial was likely to be a protracted one. *See* 47 Stat. 380, 28 U.S.C. § 417a. The Act directed that alternate jurors be discharged "upon the final submission of the case to the jury" and allowed the substitution of an alternate juror "before final submission

of the case." In 1939, the Maryland Legislature enacted a statute that was very similar to the Federal one, but made it applicable in both civil and criminal cases. 1939 Md. Laws, ch. 245. The Maryland statute also permitted a substitution "before final submission of the case." In 1946, Federal Rule of Criminal Procedure 24(c), which had been in the development stage for several years, was promulgated. That rule adopted a different articulation for when a substitution may occur—prior to the time the jury retires to consider its verdict. Two years later, the Federal statute was repealed.

In 1957, we adopted Maryland Rule 543b.,providing for alternate jurors in civil cases, following which the Maryland statute was amended to apply only to criminal cases. We patterned the rule after the existing Maryland statute, however, rather than after the Federal rule. Rule 543b. thus required the discharge of the alternate juror upon "final submission of the action" and permitted a substitution only before that event. In 1961, as part of a general revision of the rules of criminal procedure, we adopted Maryland Rule 748. That rule, in contrast to its civil counterpart, followed the language of Federal Rule of Criminal Procedure 24(c) and thus introduced into Maryland law the current standard of requiring discharge "when the jury retires to consider its verdict." [1]

The current law dealing with alternate jurors in criminal cases is embodied in Maryland Rule 4–312(b). In capital cases, the rule directs the court to appoint and retain alternate jurors as required by Maryland Code, Article 27, § 413(m). That section requires the appointment of at least two alternate jurors and provides that those alternate jurors shall be retained during the length of the proceeding under the restrictions and regulations that the judge imposes. Section 413(m)(3) states that, if a juror dies, becomes incapacitated or

---

1. The standard is now the same for both civil and criminal cases. Md. Rule 2–512(b) allows a substitution "before the time the jury retires to consider its verdict" and requires that alternate jurors be discharged at that time.

disqualified, or is discharged for any other reason "before the jury begins its deliberations on sentencing," an alternate juror "becomes a juror in the order in which selected." The statute goes on to provide, however, that an alternate juror may not replace a juror who is discharged "during the actual deliberations of the jury on the guilt or innocence of the defendant, or on the issue of sentencing." Art. 27, § 413(m)(3)(ii).

With respect to non-capital cases, Rule 4–312(b)(3), carrying forth the approach of old Rule 748, provides, in relevant part:

"Any juror who, before the time the jury retires to consider its verdict, becomes or is found to be unable or disqualified to perform a juror's duty, shall be replaced by an alternate juror in the order of selection. An alternate juror who does not replace a juror shall be discharged when the jury retires to consider its verdict."

Thus, in arriving at the current formulation, we have considered a variety of articulations—final submission of the case, before the jury begins deliberations, before the jury retires to consider its verdict.

We have not previously considered, in a decisional context, the meaning of the phrase "when the jury retires to consider its verdict"—whether it refers to the point at which the judge directs the jury to retire, the time when the jury actually leaves the courtroom (whether or not it intends to report directly to the jury room to begin deliberations), the time when the jury enters the jury room to begin deliberations and closes the door, or when the jury actually begins to discuss the case behind the closed door. Any of those constructions are possible ones. Nor have we had occasion to determine the effect of a violation of the rule—whether the improper substitution of an alternate juror beyond the time allowed in the rule or at any time after that juror has been discharged constitutes presumptive prejudice. Because there is no precedent in Maryland, we shall look elsewhere, to see how other courts have construed comparable language.

The Federal courts and a number of State courts have dealt with both of those issues—the latest point at which an alter-

nate juror may be substituted in a criminal case and the effect of substituting an alternate juror thereafter. The decisions fall into two broad categories: those in which a substitution was made before any actual deliberations commenced, and those in which a substitution was made after the jury had begun deliberations. With respect to the first category, all of the courts that have ruled upon the matter have upheld the substitution of an alternate juror prior to the time the jury actually begins deliberations—the latest of the events enumerated above. The Federal courts and some State courts have even sustained substitutions falling into the second category, either pursuant to a rule or statute allowing such a substitution, or, notwithstanding that the substitution constituted a plain violation of the applicable rule, on the ground of non-prejudice. Courts adopting a non-prejudice view in the face of defense objections have determined the existence, *vel non*, of prejudice based on a variety of procedural safeguards implemented by the trial court and upon the strength of the government's case. Other courts have disagreed and not permitted substitutions, even on a lack of prejudice basis, once deliberations have begun.

The State relies heavily on the Federal decisions, as did the Court of Special Appeals, so we shall begin with them. They implement, of course, Federal Rule of Criminal Procedure 24(c) which, like Rule 4-312(b)(3), presently permits a substitution "prior to the time the jury retires to consider its verdict," but, in practical effect, most of those decisions go well beyond the limitations of the rule and well beyond any standard that we have ever applied.

The Federal approach to the rule itself is interesting in light of the developmental history of the rule, the early part of which is described by Professor Lester Orfield in TRIAL JURORS IN FEDERAL CRIMINAL CASES, 29 F.R.D. 43 (1962). The first draft of the rule provided that an alternate juror who did not replace a principal juror would be discharged "after the jury returns its verdict or earlier in the discretion of the court." *Id.* at 44. That, of course, would seemingly have allowed a mid-deliberation substitution. The next version

provided that an alternate juror who did not replace a principal juror "before the jury retires," was to "remain subject to call and shall not be discharged until the principal jurors are discharged," thus also suggesting the prospect of a mid-deliberation substitution. *Id.* at 46. Apparently, the Supreme Court questioned both the desirability and constitutionality of substituting an alternate juror "after the jury has retired and begun its deliberations" (*id.* at 46), and eventually the draft rule was amended to its current form.

The use of alternate jurors, as noted, was devised as a means of dealing with the problem of a regular juror, for one reason or another, being unable to continue to serve. Federal Rule of Criminal Procedure 23(b) also deals with that problem. That rule requires that juries in criminal cases consist of 12 persons but, as initially promulgated, permitted the parties, at any time before verdict and with the approval of the court, to stipulate in writing to a number less than 12. The requirement of a stipulation in Rule 23(b), coupled with the limitation in Rule 24(c) precluding a substitution after the jury retired to consider its verdict, left open the problem of a juror becoming disqualified or otherwise unable to continue serving after the commencement of deliberations. If any defendant refused to stipulate to a jury of less than 12, a mistrial would have to be declared. That problem led some courts to find creative, and, in our view, highly questionable, ways around the strictures of Rule 24(c) and also prompted the Federal Advisory Committee on Rules, in the early 1980's, to consider amendments to both rules.

The Advisory Committee acknowledged the need for a solution other than mistrial, but it expressly rejected the approach of allowing substitutions after the commencement of deliberations. In its 1983 report to the Supreme Court, it noted reservations and objections expressed by Professors Wright and Moore, as well as by a number of courts, over such an approach and added its own concern "that there does not appear to be any way to nullify the impact of what has occurred without the participation of the new juror"—that "[e]ven were it required that the jury 'review' with the new

juror their prior deliberations or that the jury upon substitution start deliberations anew, it still seems likely that the *continuing* jurors would be influenced by the earlier deliberations and that the new juror would be somewhat intimidated by the others by virtue of being a newcomer to the deliberations." *See* 97 F.R.D. 245, 300–01 (1983). Rather than run those risks, the Advisory Committee opted for amending Rule 23(b) to provide that, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, a valid verdict may be returned by the remaining 11 jurors, even in the absence of a stipulation. *Id.* at 262. The Supreme Court acceded to that approach, and, as a result, Rule 23(b) was amended and Rule 24(c) remained as it was.

That view has since changed. Rule 24(c) was amended by the Supreme Court on April 26, 1999, and, when the amendments take effect on December 1, 1999 (unless rejected or altered by Congress), will expressly permit the substitution of alternate jurors after deliberations have commenced. *See* AMENDMENTS TO THE FEDERAL RULES OF CRIMINAL PROCEDURE, 119 S.Ct. Ct. R–5, 8 (1999). The limitation, "prior to the time the jury retires to consider its verdict," has been stricken in favor of a new provision:

"When the jury retires to consider the verdict, the court in its discretion may retain the alternate jurors during deliberations. If the court decides to retain the alternate jurors, it shall ensure that they do not discuss the case with any other person unless and until they replace a regular juror during deliberations. If an alternate replaces a juror after deliberations have begun, the court shall instruct the jury to begin its deliberations anew."

The Advisory Committee Note explains that, notwithstanding Rule 23(b), "there may be cases where it is better to retain the alternates when the jury retires, insulate them from the deliberation process, and have them available should one or more vacancies occur in the jury." That might be especially appropriate, the Committee said, in long, costly, and complicated cases. To that end, the Committee believed that the court should have the discretion to decide whether to retain or

discharge the alternate jurors when the jury retires and to use either Rule 23(b) to proceed with 11 jurors or substitute an alternate juror who has not been discharged.

To a large extent, as we shall see, this recent change in Rule 24(c) simply authorizes, in a more direct way, what many Federal courts had been doing anyway, using a very liberal harmless error analysis to sustain what were clear violations of the current rule.

With respect to the meaning of the present language of the rule (prior to the 1999 amendment), the Federal approach has been that substitutions are permissible until the jury actually begins deliberations. The cut-off is clearly not when argument and instructions are concluded or even when the jury leaves the courtroom, as urged by Hayes, but when the jury commences deliberations. *See United States v. Cohen,* 530 F.2d 43 (5th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); *Martin v. United States,* 691 F.2d 1235 (8th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *U.S. v. Davis,* 15 F.3d 1393 (7th Cir.), *cert. denied,* 513 U.S. 896, 115 S.Ct. 250, 130 L.Ed.2d 171 (1994). In *Cohen,* immediately after the judge had completed his instructions and ordered the jury to retire, Cohen's co-defendant complained that one of the jurors had been sleeping during the instructions. The court recalled the jury, which had been waiting in a hallway outside the courtroom, questioned the juror, and eventually replaced him with an alternate juror. The appellate court rejected Cohen's argument that the substitution came after the jury had retired to consider its verdict, holding instead that "[a]ppellant's interpretation is too formalistic. Although the jury had been ordered to retire, it had not yet done so because the jurors had never begun their deliberations. We find no violation of the rule." *United States v. Cohen, supra,* 530 F.2d at 48.

In *Martin,* the court completed its instructions, excused the alternate juror, and directed the jury to retire. Moments later, the judge received word of some "bizarre behavior" on the part of one of the jurors—impersonating a bailiff and

attempting to gain access to the chambers of another judge. The court immediately sent his clerk to direct the jury not to begin deliberations and to return to the courtroom. The alternate juror, who was either still in the courtroom or in an adjacent hallway, was directed to remain in the courtroom. Although some 17 minutes had elapsed since the jury was sent to deliberate, the court determined that no deliberations had yet taken place and substituted the alternate juror for the one that the court found mentally and physically incapable of serving. Following *Cohen* and *Metropolitan Paving Co. v. International Union of Operating Engineers*, 439 F.2d 300 (10th Cir.1971), the Court of Appeals for the Eighth Circuit held that, under the circumstances, "although the jury had left the courtroom, because the deliberations had not commenced, the jury had not retired to consider the verdict, and the substitution of the alternate juror was proper." *Martin*, *supra*, at 1237–38.

In *U.S. v. Davis, supra*, the judge completed his instructions and excused the alternate jurors at about 4:30 in the afternoon. He recommended to the panel that it commence its deliberations the next morning but suggested that it choose a foreman that afternoon. The jury retired to the jury room but was brought back three minutes later so the judge could explain the verdict forms, which he had neglected to do. The jury again retired but, within eight minutes, informed the marshal that they wanted to begin deliberations the next day, and they were therefore excused for the day. When informed that one of the jurors was seen leaving the courtroom with a spectator, the judge called one of the excused alternate jurors and had him return to the courtroom the next morning. After some further investigation, the judge decided to replace the regular juror with the alternate juror, over the objection of the defendant.

On appeal, Davis complained about the substitution, both on the ground that it occurred after the jury had retired to consider its verdict and because the judge had not interviewed the alternate juror to ensure that the juror had not been exposed to outside influence. The court found both argu-

ments unpreserved, noting that (1) Davis had complained at trial only about the removal of the regular juror, not about the substitution of the alternate, and (2) he never asked the trial court to interview the alternate juror. Addressing the merits of the first argument, however, the appellate court concluded that, "although the jury had retired, it had not as yet begun to consider its verdict" when the substitution occurred. *Id.* at 1409. Engaging in what would appear to be some appellate judicial notice, the court determined that no deliberations occurred when the jury first retired, "considering that it is customary for jurors to first introduce themselves to each other and elect a jury foreman before actually considering the merits of the evidence presented to them during the trial." *Id.* Going a monumental step further, the court concluded that, even if it were to assume that there might have been "a minuscule amount of deliberation," and that the error was "plain," Davis could not prevail because he could not demonstrate that the error affected his substantial rights. *Id.* The court had difficulty in understanding how the presence of the alternate juror prejudiced Davis in light of the strength of the government's case.

That final conclusion was based on the then-recent holding of the Supreme Court in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) and, as we shall see, articulated a basis for the Federal courts essentially to ignore the limitations of Rule 24(c). *Olano* involved a complex trial that lasted three months. With the concurrence of the parties, the court had selected 14 jurors to hear the case without designating the two alternate jurors until the end of the case. At that point, the court, without objection by Olano, allowed the two alternate jurors to sit in the jury room during deliberations, under instructions that they were not to participate in the deliberations. One of the alternate jurors remained with the jury until it reached a verdict.

The Court of Appeals for the Ninth Circuit, recognizing that, in the absence of an objection by Olano, the matter had to be considered under the plain error doctrine enunciated in Fed.R.Crim.P. 52(b), nonetheless reversed the judgment on

the grounds that (1) Rule 24(c) was violated, and (2) the violation was inherently prejudicial and thus reversible *per se.* *U.S. v. Olano,* 934 F.2d 1425 (9th Cir.1991). The Supreme Court vacated that judgment. Though agreeing that the rule had been violated and that the violation constituted "plain error" under Rule 52(b), the Court concluded that Olano had failed to show that the error affected his substantial rights, which it declared was a prerequisite to relief under Rule 52(b). In that regard, the Court held that, to affect substantial rights, the error "must have been prejudicial: It must have affected the outcome of the district court proceedings." *Id.* at 734, 113 S.Ct. at 1777–78, 123 L.Ed.2d at 519. The Court noted that the presence of alternate jurors during jury deliberations "might prejudice" the defendant in two ways—by the alternate jurors actually participating in the deliberations, verbally or through "body language," or by their exerting a chilling effect on the regular jurors. Conversely, it said, quoting from *United States v. Allison,* 481 F.2d 468, 472 (5th Cir.1973), " 'if the alternate in fact abided by the court's instructions to remain orally silent and not to otherwise indicate his views or attitude ... and if the presence of the alternate did not operate as a restraint upon the regular jurors' freedom of expression and action, we see little substantive difference between the presence of [the alternate] and the presence in the juryroom of an unexamined book which had not been admitted into evidence.' " *Olano, supra,* 507 U.S. at 739, 113 S.Ct. at 1780–81, 123 L.Ed.2d at 523.

The Court observed that Olano had made "no specific showing" that the alternate jurors had either participated in the deliberations or chilled those deliberations and, without deciding whether he *could* have made such a showing without violating Fed.R.Evid. 606(b), noted only that he had not requested a hearing on the matter and had produced no evidence. Finally, the Court declared that it would not presume prejudice for purposes of a Rule 52(b) analysis. To the contrary, it presumed that the alternate jurors followed the court's instructions not to participate in the deliberations. Because, in the Court's view, the conceded error did not affect

substantial rights, the Court of Appeals had no authority to correct it under the rule.

Even before *Olano,* Federal courts were finding ways to avoid a strict enforcement, and sometimes *any* enforcement, of Rule 24(c). In *United States v. Allison,* 481 F.2d 468 (5th Cir.1973), *cert. denied,* 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 759 (1974), cited by the Supreme Court in *Olano,* a juror became ill, but it was not clear whether he would be unable to continue. With the consent of all counsel, the court declined to discharge the alternate juror and allowed that juror to accompany the jury into the jury room, instructing him, however, not to participate in the deliberations. The alternate juror remained with the jury for about one-and-a-half hours. The regular juror was then found able to continue, whereupon the alternate juror was discharged. On appeal from his conviction, Allison argued that the procedure was defective and that he personally had not consented to it. The court concluded that a departure from Rule 24(c) requires a new trial only if there is a reasonable possibility that the presence of the alternate juror affected the jury's verdict, and it remanded the case for the trial court to take evidence and make that determination.

In *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981), *cert. denied sub nom., Meinster v. United States,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), a complex drug case involving several defendants, the trial court, over objection refused to dismiss an alternate juror when the jury retired to deliberate, but separately sequestered the alternate juror. After a day-and-a-half of deliberations, one juror took ill and was eventually excused. Over further objection, the court then substituted the alternate juror, after questioning that juror to assure that he had not discussed the case with anyone or received extrinsic information about it and after receiving assurances from each of the remaining jurors that they could "wipe from his or her mind the deliberations of the two previous days and start fresh and anew." *Id.* at 991. On appeal, the court concluded that, although the retention of the alternate juror was, itself, a violation of the rule, it was not

one that required reversal. With respect to the substitution, the court held that the safeguards utilized by the trial court "neutralized the possible prejudice." *Id.* at 996. Going a step beyond *Allison,* the court saw no need for a remand to determine prejudice, as the safeguards noted "obviated the danger of undue prejudice." *Id.*

*United States v. Hillard,* 701 F.2d 1052 (2d Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983) is to the same effect. After two-and-a-half days of deliberations, one juror became ill and was replaced by an alternate juror who had been retained by the trial court, despite evidence that the alternate juror had, in the meanwhile, discussed the case with the other alternate juror who had been retained.. The appellate court agreed that the retention and substitution constituted violations of Rule 24(c) but held that a violation of the rule "does not require reversal per se, absent a showing of prejudice." *Id.* at 1058. Notwithstanding that the two alternate jurors had discussed the case between themselves, the court affirmed the judgment. Pending a change in the rule, which has since occurred, the court suggested that juror substitution "should be permitted only in complex cases where thorough precautions are taken to ensure that the defendants are not prejudiced." *Id.* at 1061. *See also United States v. Gambino,* 788 F.2d 938 (3d Cir.), *cert. denied,* 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986); *United States v. Kopituk,* 690 F.2d 1289 (11th Cir.1982), *cert. denied sub nom. Turner v. United States,* 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed.2d 300 (1983); *U.S. v. Huntress,* 956 F.2d 1309 (5th Cir.1992), *cert. denied,* 508 U.S. 905, 113 S.Ct. 2330, 124 L.Ed.2d 243 (1993) (no reversible error in substituting previously discharged alternate juror after three hours of jury deliberations notwithstanding that alternate juror had, in meanwhile, discussed the case with her employer); *U.S. v. Quiroz–Cortez,* 960 F.2d 418 (5th Cir.1992); *United States v. Josefik,* 753 F.2d 585 (7th Cir.), *cert. denied sub nom. Soteras v. United States,* 471 U.S. 1055, 105 S.Ct. 2117, 85 L.Ed.2d 481 (1985); *compare United States v. Lamb,* 529 F.2d 1153 (9th Cir.1975), which has not

been followed elsewhere in the Federal system and has probably been tacitly overruled by *Olano.*

In some cases, the harmless error, or non-prejudice, analysis was used to sustain convictions where alternate jurors who should have been discharged actually participated with the full jury in the deliberations, acting as 13th and 14th jurors. *See U.S. v. Ottersburg,* 76 F.3d 137 (7th Cir.1996) (no objection to procedure; case resolved under *Olano* plain error doctrine); *U.S. v. Molinaro,* 11 F.3d 853 (9th Cir.1993), *cert. denied sub nom. Mangano v. U.S.,* 513 U.S. 1059, 115 S.Ct. 668, 130 L.Ed.2d 602 (1994) (same). *See also U.S. v. Acevedo,* 141 F.3d 1421 (11th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1048, 143 L.Ed.2d 54 (1999); *U.S. v. Houlihan,* 92 F.3d 1271 (1st Cir.1996), *cert. denied,* 519 U.S. 1118, 117 S.Ct. 963, 136 L.Ed.2d 849 (1997).

Although it is certainly implicit from some of these cases that the Federal courts have found no problem with the trial court recalling an alternate juror who had already been discharged, there was little or no discussion in those decisions of that aspect of the issue. The matter *was* dealt with in *United States v. Evans,* 635 F.2d 1124 (4th Cir.1980), *cert. denied,* 452 U.S. 943, 101 S.Ct. 3090, 69 L.Ed.2d 958 (1981), however. With the consent of the defendant, the trial court substituted a previously discharged alternate juror after the jury had retired to consider its verdict. Judge Murnaghan, for the court, noted the direction in Rule 24(c) that the alternate jurors be discharged when the jury retires but observed that "[t]he rule does not purport, however, to deny power to the trial court to reconstitute someone as a juror who previously has been discharged." *Id.* at 1127.

With respect to the substantive meaning of the rule, the courts in the District of Columbia and Alabama have adopted the Federal approach of using the actual commencement of deliberations as the cut-off point for substitution. In *Leeper v. U.S.,* 579 A.2d 695 (D.C.App.1990), the court, upon completion of instructions, excused the two alternate jurors and directed the jury to retire. After escorting the jury to the jury room,

the clerk informed the court that one of the jurors had learned that her mother had died. The clerk also advised that she had left the jury room door open and told the jury not to do anything until she returned. Eventually, the court excused the juror and, after the remaining 11 jurors had been in the jury room for about 25 minutes, they too were excused for the day. The next morning, after examining the alternate juror, who had been recalled, and being satisfied that he could serve, the court substituted the alternate juror. Noting that the District of Columbia rule was modeled after the Federal rule, the appellate court followed *Martin v. United States, supra,* 691 F.2d 1235 and *United States v. Cohen, supra,* 530 F.2d 43, and held that no violation had occurred. Noting that the rule speaks of the jury retiring "to consider its verdict," the court concluded:

> "Although Leeper's jury had 'retired' after the judge had delivered his instructions, in the sense that the jurors had gone to the jury room, it had not done so 'to consider its verdict.' This is evident from the undisputed fact that the deputy clerk left the door open and instructed the jurors 'not to do anything.' Nothing in the record suggests that the jury ignored this direction, nor was there any contemporaneous claim that this had occurred or that additional prophylactic measures were appropriate."

*Leeper v. United States, supra,* 579 A.2d at 697.

In *Cork v. State,* 433 So.2d 959 (Ala.Crim.App.1983), as the jury was proceeding to the jury room, one juror mentioned to the judge that he knew the defendant's father. The judge sent instructions to the jury not to start deliberating, and he questioned the juror. After conferring with counsel, the judge excused the juror and replaced him with an alternate juror, who had remained in the courtroom. Affirming the ultimate conviction, the appellate court construed the language "prior to the retirement of the jury to consider its verdict" as meaning "before the jury began its deliberation." *Id.* at 963. Relying on *United States v. Evans, supra,* 635 F.2d 1124, the court also rejected the argument that the court was unable to recall an alternate juror after that juror had been discharged.

*Id.; see also State v. Escobedo,* 573 N.W.2d 271 (Iowa App. 1997).

We have found no case in either the State or Federal system that has construed language similar to that contained in Rule 4–312(b)(3) as precluding the substitution of an alternate juror prior to the time the jury actually begins deliberations, and certainly none has been cited to us. Every court that has considered the matter has concluded, as did the Court of Special Appeals, that the phrase "retires to consider its verdict" means when the jury actually enters the jury room and commences its deliberations. No court has found it inherently impermissible to recall and substitute an alternate juror who previously had been discharged where the jury had not yet commenced deliberations and the court was reasonably assured that the recalled juror had not been "contaminated" by any outside influence.

We have examined the Federal cases dealing with mid-deliberation substitutions because that has been the predominant circumstance. The State courts are nowhere near as unanimous in their view on that matter. Some States have adopted rules or statutes that, like the recent revision to Fed.R.Crim.P. 24(c), expressly permit the substitution of an alternate after deliberations have begun.[2] Some reach essentially the same result by following the Federal approach of applying a liberal harmless error or non-prejudice test to mid-deliberation substitutions. *See State v. Grovenstein,* 335 S.C. 347, 517 S.E.2d 216 (1999), *confirming State v. Bonneau,* 276 S.C. 122, 276 S.E.2d 300 (1980); *State v. Walton,* 41 Conn.App. 831, 678 A.2d 986 (1996); *People v. Henderson,* 45 Ill.App.3d 798, 4 Ill.Dec. 76, 359 N.E.2d 909 (1977); *People v. Dry Land Marina, Inc.,* 175 Mich.App. 322, 437 N.W.2d 391 (1989); *State v. Williams,* 659 S.W.2d 298 (Mo.App.1983). Other

---

2. *See,* for example, ARIZ. R.CRIM. PROC. 18.5; CAL.PENAL CODE § 1089 (West 1985); GA.CODE ANN. § 15–12–172 (1994); IDAHO CRIM. R. 24; IND. R. TRIAL PROC. 47; KAN. STAT. ANN. § 22–3412 (1988); MASS. ANN. LAWS ch. 234 § 26B (Law.Co-op.1986); NEV.REV.STAT. ANN. § 16.080 (Michie 1998); N.H.REV.STAT. ANN. § 500–A:13 (1997); N.J. R. COURT § 1:8–2(d);WASH. CRIM. R. 6.5.

courts have either refused to apply such a test or have found prejudice when the rule has been violated. *See State v. Wideman,* 69 Haw. 268, 739 P.2d 931 (1987) (closeness of case and temporary deadlock of jury precluded finding of harmless error); *State v. Miley,* 77 Ohio App.3d 786, 603 N.E.2d 1070 (1991) (substitution after jury returned partial verdict prejudicial); *People v. Burnette,* 775 P.2d 583 (Colo.1989) (prejudice presumed from mid-deliberation substitution and may be overcome only by showing that trial court took extraordinary precautions to ensure that the defendant would not be prejudiced); *Com. v. Saunders,* 454 Pa.Super. 561, 686 A.2d 25 (1996) (similar view); *Bulls v. United States,* 490 A.2d 197 (D.C.App.1985); *see also Thurman v. Com.,* 611 S.W.2d 803 (Ky.App.1981); *State v. Lehman,* 108 Wis.2d 291, 321 N.W.2d 212 (1982); *Cantrell v. State,* 265 Ark. 263, 577 S.W.2d 605 (1979); *State v. Escobedo, supra,* 573 N.W.2d 271.

We are not at liberty, in a decisional context, to change the language of Rule 4–312(b)(3), and we refuse to embark on the Federal approach of circumventing the rule through an expansive harmless error or presumptive non-prejudice doctrine that is entirely foreign to our jurisprudence. If there is to be a change in the rule or the policy underlying the rule, it must come through the normal rule-making process. Rules, however, like statutes, are to be read generally in a common-sense manner. Through Maryland Rule 1–201(a), we have directed that they be construed "to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay."

■ Applying that standard in the light of the cases that have interpreted language similar to that embodied in Rule 4–312(b)(3), we conclude that an alternate juror who remains qualified to serve may be substituted for a regular juror who is properly discharged, until such time as the jury enters the jury room to consider its verdict and closes the door. We view the closing of the door as marking the point at which the ability to substitute ends—the effective point at which we consider the jury to have commenced deliberations. We be-

lieve that to be a fair and practical standard that is consistent with the text and the purpose of the rule and that avoids some of the problems inherent in the available alternatives. It is a fair standard in that a defendant is not prejudiced by a substitution if (1) the jury has not yet entered the jury room to discuss the case, and (2) the alternate juror had not been subjected to any outside influence and remains qualified to serve. Even after a case is submitted to a jury, in the sense that instructions and closing arguments have been completed, juries are often allowed to defer the commencement of deliberations for some period of time—until after lunch, until the next morning, or even over a weekend or holiday. Whether the jury has been sequestered or unsequestered, the delay is ordinarily no different, in terms of any prejudice to the defendant, than breaks that occurred during the trial. Prejudice from a substitution can arise, in terms of time, only when the jurors begin to discuss the case, and, in terms of the alternate juror, only if that juror, in the meanwhile, has become "contaminated" to the point of no longer being qualified to serve.

It is a practical standard for two reasons. As is evident from the cases, problems with jurors can surface at any time, even as they are filing out of the courtroom. If a regular juror becomes disabled or otherwise subject to disqualification while walking to the jury room or during a lunch break or during an evening or weekend hiatus and an alternate juror remains available and qualified to serve, there is simply no reason to require a mistrial. Such an approach would hardly promote simplicity in procedure, fairness in administration, or the elimination of unjustifiable expense. It is a practical standard as well because compliance with it can be established through objective and extrinsic evidence, without the need to question jurors as to what went on in the jury room after the door was closed—when deliberations really started. Jurors are ordinarily accompanied to the jury room by a sheriff or bailiff, who can attest to when the door was closed. It is an easily ascertainable event. All that the court need do is to hold the alternate jurors, and not formally discharge them,

until the sheriff or bailiff reports back that the jurors have entered the jury room and the door has been closed. That can and should be made a matter of record. If the jury is to be excused for lunch or for the day before commencing deliberations, the court should place alternate jurors under the same instructions and limitations as the regular jurors and direct them to report to the courtroom or otherwise be readily available when the jury is scheduled to return to begin deliberations. This approach involves a minimum of inconvenience, moots the argument that an alternate juror, once formally discharged, may not be recalled,[3] and should assure that alternate jurors remain qualified to substitute until the time that substitution is no longer permissible.

### *This Case*

■ There are several problems with what occurred in the courts below. First, we disagree with the conclusion of the Court of Special Appeals that Hayes did not preserve for appellate review his complaint about the substitution. The trial judge made clear that, if the regular juror was excused, the alternate juror would be substituted. He said: "it is my intention to excuse juror number ten and substitute the alternate." Hayes was not given the option of proceeding with 11 jurors, or, indeed, any other option. It was clear that the court had no intention of continuing the case to the next day or of discharging the juror and then declaring a mistrial; whether to substitute the alternate juror was the issue. When the judge made his intention clear, Hayes lodged and then repeated a general objection.

■ Although we recognize, of course, that the construction of the rule and the guidelines we have enunciated in this

---

3. Although, as noted, the Court of Appeals for the Fourth Circuit and the District of Columbia Court of Appeals have concluded that a rule comparable to Maryland Rule 4-312(b)(3) does not preclude a court from recalling an alternate juror who had been discharged, some courts have found that impermissible, on the ground that a juror, once discharged, is no longer a juror. *See State v. Bobo*, 814 S.W.2d 353 (Tenn.1991); *Thurman v. Commonwealth*, 611 S.W.2d 803 (Ky.App. 1980); and *Cantrell v. State*, 265 Ark. 263, 577 S.W.2d 605 (1979).

Opinion were not available to the trial judge, we nonetheless must deal with what occurred in the light of that standard and those guidelines. In that regard, there were at least two defects that require a reversal. First, it is not at all clear on what basis the court concluded that no deliberations had occurred. Given that court resumed its session just before one o'clock, it may be that the jury had been excused for lunch, but there is nothing in the record to indicate that such was the case. Indeed, the record actually suggests otherwise. In excusing the jury, the court told them to "retire to the jury room," to "retire to deliberate upon the verdict," not to go to lunch. Nor does the record reveal how much time elapsed or what the jury was doing during the critical period. If the jurors remained even briefly in the jury room with the door closed, substitution was impermissible, and, on this record, that prospect appears more than merely possible.

A second problem arises from the fact that the alternate juror was allowed to leave the courtroom for some undefined period of time and was not interviewed to determine whether he had discussed the case with anyone or was otherwise subjected to any impermissible influence. Assurance that the alternate juror remains qualified to serve is a prerequisite to a substitution and, unless waived by the defendant, must be established on the record. Even courts that have allowed a mid-deliberation substitution on a non-prejudice basis have required that much. In short, on this record, we would be left to speculate whether the criteria we believe minimally necessary have been satisfied, and we are unwilling to engage in such speculation.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDGMENT OF CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND TO THAT COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.