686 A.2d 629

Frederick A. POLLITT

v.

STATE of Maryland.

No. 9, Sept. Term, 1996.

Court of Appeals of Maryland.

Dec. 20, 1996.

Nancy M. Cohen, Assistant Public Defender, argued (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

David C. Larson, Assistant Attorney General, argued (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI and RAKER, JJ., and ROBERT C. MURPHY, Judge (retired), Specially Assigned.

CHASANOW, Judge.

In this case we are called upon to decide whether the Court of Special Appeals erred in holding that when a juror is excused immediately after the jury is sworn with no alternates, the trial judge may *sua sponte* select a replacement juror without allowing the defendant an additional peremptory challenge. We hold that the Court of Special Appeals did err, and we reverse.

## I.

In the early morning hours of Christmas day 1994, Petitioner, Frederick Pollitt, went to his mother-in-law's house to visit his estranged wife. An argument erupted outside the house between Petitioner and his wife's escort, Mr. John Donoway. Although there is a dispute as to how the argument began, both men agree that Donoway knocked Petitioner to the ground and that the men were wrestling when Petitioner stabbed Donoway with a four-inch pen knife.

Petitioner was charged with assault and battery and was tried before a jury in the Circuit Court for Wicomico County. During jury selection, counsel for both parties exercised their peremptory challenges by striking names from the jury list pursuant to Maryland Rule 4–313(b)(2). Twelve jurors were seated after their names were read from the list by the clerk. Counsel for both parties approved of the twelve jurors selected. Neither party had requested that alternate jurors be seated because the trial was expected to be short in duration; the jury was, therefore, impanelled without alternate jurors. Immediately after the regular jury was sworn, and before opening statements, the presiding judge, the Honorable D. William Simpson, became aware that juror number one, Phyllis Ball, had difficulty hearing. The following conversation took place:

"THE COURT: Would you rather be excused?

THE JUROR: I guess if it's all right.

THE COURT: Okay. We will excuse you today. There is no objection for counsel selecting another juror?

[DEFENSE COUNSEL]: No, Your Honor.

THE COURT: All right. We will go ahead and select one, go on to the next one. * * * Go ahead and call her."

At this point, the clerk called Marianna Holloway, the next person on the jury list. When Judge Simpson asked Ms. Holloway to be seated as juror number one, defense counsel asked to approach the bench. The following exchange took place at the bench:

"[DEFENSE COUNSEL]: Your Honor, with all due respect, I would move to strike——

THE COURT: Why didn't you strike her before?

[DEFENSE COUNSEL]: Because I didn't get to with 4 and 4, Your Honor. Apparently, it was a judgment call on how far we can get with [the prosecutor's] 4 and my 4.

THE COURT: No, I am not going to permit that. You said all right to the selection of the jury. You took your strikes. She took hers.

[DEFENSE COUNSEL]: I think I am entitled to one strike though.

THE COURT: Why? We are not picking an alternate.

[DEFENSE COUNSEL]: It is unfair——

THE COURT: Why is it unfair?

[DEFENSE COUNSEL]: Just because we picked one that wasn't considered. I thought for fairness sake, we should each have one strike.

THE COURT: No, I don't think so. * * * All right. Now, swear in Miss Holloway."

The jury convicted Petitioner of battery, and he was sentenced to serve five years imprisonment, with all but eighteen months suspended, and 36 months probation thereafter.

Petitioner appealed to the Court of Special Appeals, where he sought to have his conviction reversed. Petitioner advanced two arguments in the Court of Special Appeals. His first argument was that he was deprived of his right to informed and comparative rejection as to Ms. Holloway.[1] Defense counsel argued that he might have preserved one of his peremptory challenges in order to strike Ms. Holloway, rather, than one of the jurors whom he did strike, if he had known that the clerk would be able to reach Ms. Holloway's name on the jury list. Petitioner's second argument was that the selection of Ms. Holloway was effectively the selection of an alternate juror. Additional peremptory challenges are available when alternate jurors are selected, and Petitioner argued that he did not agree to select another juror without any additional challenges.

The intermediate appellate court held that Petitioner was not denied the advantage of comparative rejection as to Ms. Holloway and that the selection of Ms. Holloway was not effectively the selection of an alternate juror. The Court of

---

1. Petitioner also asked the Court of Special Appeals to determine whether the circuit court erred in denying his motion to dismiss for failure to initiate trial within 180 days. That issue is not before this Court.

Special Appeals affirmed Petitioner's conviction. We granted Petitioner's request for a writ of certiorari and, for reasons we shall explain below, we reverse the judgment of the Court of Special Appeals.

## II.

Juror Ball's hearing impairment did not become evident until immediately after the jury had been sworn. The court removed juror Ball *sua sponte,* with the consent of both parties, as soon as it became aware of her disability. Petitioner does not dispute the court's authority to remove juror Ball. Petitioner argues, however, that once the court resolved to remove juror Ball, it had only two choices: to declare a mistrial pursuant to Article 27, § 594 and begin jury selection anew or to select a substitute juror. Petitioner did not move for a mistrial; instead, he agreed to "counsel selecting another juror," and he expected at least one additional peremptory challenge. Petitioner has asked this Court to consider the same two arguments that he raised below.

 Petitioner argues that he was denied the advantage of comparative rejection. In *Spencer v. State,* 20 Md.App. 201, 314 A.2d 727 (1974), the Court of Special Appeals explained the benefit of comparative rejection that is inherent in the exercise of peremptory challenges. In *Spencer,* the clerk, during the peremptory challenge phase of jury selection, altered the order in which the names were called from the jury list. *Spencer,* 20 Md.App. at 207, 314 A.2d at 731. The defense counsel had used his strikes in a manner that would allow a particular venire person to be seated as a juror, but that juror was lost because of the clerk's deviation from the usual procedure. *Spencer,* 20 Md.App. at 206–07, 314 A.2d at 731. The trial court overruled counsel's objection to the clerk's reading and denied counsel's request to have his desired juror seated. *Spencer,* 20 Md.App. at 208, 314 A.2d at 731.

On appeal Judge Moylan, writing for the Court of Special Appeals, stated:

"Although the peremptory challenge, to be sure, only entitles a defendant to reject jurors and not to select others, there is at least some element of indirect selection inexorably at work in the very process of elimination. * * * When the appellant determined to spend his last three peremptories to challenge the first three of the next four persons whom he rightfully expected to be called, he was deciding that he liked the first three less than he liked the fourth. Had he known that he was comparing the three persons challenged with some other fourth person further down the list, he might well have preferred one, or more, of the rejected threesome to the unanticipated fourth. He was thus affirmatively misled in his three decisions to reject."

*Spencer,* 20 Md.App. at 208, 314 A.2d at 732. Petitioner argues that if he had known how far down the list the clerk would get, Petitioner might have saved one challenge to use against Ms. Holloway. The jury that was initially sworn was the product of the peremptory challenges that he and the prosecutor exercised under the expected procedure, and counsel had indicated his satisfaction with this jury. Because of the unforeseen circumstance of one juror's disability, however, the clerk had to choose a name farther down on the list than she otherwise would have. This juror had not been considered by counsel when exercising his strikes. Thus, counsel argues that he was denied his right to informed and comparative rejection.

*Spencer,* however, is distinguishable. The circumstance giving rise to the holding in *Spencer* was the "arbitrary and unexplained action of the clerk" in departing from the "standard operating procedure" for no apparent reason. *Spencer,* 20 Md.App. at 208, 207, 314 A.2d at 732, 731. The Court of Special Appeals held that, under those unique circumstances, the defendant was "affirmatively misled" in his exercise of peremptory challenges. *Spencer,* 20 Md.App. at 208, 314 A.2d at 732. There was no such arbitrary action in the present case; nobody could be faulted for juror Ball's undiscovered hearing impairment.

Petitioner also suggests that the selection of a replacement juror without allowing additional peremptory challenges was a deviation from the procedure for selection set forth in Md. Rule 4–313. Maryland Rule 4–313(a)(5) provides:

> "*Alternate Jurors*—For each alternate juror to be selected, the State is permitted one additional peremptory challenge for each defendant and each defendant is permitted two additional peremptory challenges. The additional peremptory challenges may be used only against alternate jurors, and other peremptory challenges allowed by this section may not be used against alternate jurors."

Petitioner argues that "the replacement of juror Ball by the next member of the panel which was still in the courtroom had the same effect" as the selection of an alternate. It was apparent that Petitioner's attorney believed that he would be entitled to additional peremptory challenges when he consented to the court's replacement of a sworn juror.

Maryland courts are often confronted with the need to excuse a juror after the jury has been sworn. When such a situation arises in a criminal case, as here, courts commonly proceed in one of three ways. First, the court can declare a mistrial. Maryland Code (1957, 1996 Repl.Vol.) Article 27, § 594; *e.g., State v. Gorwell*, 339 Md. 203, 217, 661 A.2d 718, 725 (1995)("The loss of a juror due to illness or other proper cause 'justifies a discharge of the jury and declaring a mistrial.' ")(quoting *Reemsnyder v. State*, 46 Md.App. 249, 256, 416 A.2d 767, 771, *cert. denied*, 288 Md. 741 (1980)), *cert. denied*, —— U.S. ——, 116 S.Ct. 781, 133 L.Ed.2d. 732 (1996). Neither the court nor either party ever suggested this course of action. The court can also remove the juror and, with the consent of both parties, proceed with only eleven jurors. Md.Rule 4–311(b); *e.g., State v. Kenney*, 327 Md. 354, 609 A.2d 337 (1992)(allowing deliberations to proceed with only eleven jurors after one juror was excused to have surgery). It appears that neither the court nor either party ever considered this course of action.

Finally, the court can remove the juror and replace him or her with an alternate juror. Md.Rule 4–312(b); *e.g., State v. Cook*, 338 Md. 598, 659 A.2d 1313 (1995)(replacing seated juror with alternate after concluding seated juror could not follow court's instructions). In the present case, however, neither party had requested alternates, and none had been appointed. Maryland Rule 4–312(b)(3) makes it clear that, in a non-capital case, whether to appoint alternate jurors is within the discretion of the trial court, and Petitioner has not challenged the trial court's decision to forego the appointment of alternates here.

■ Under the unique facts of this case, the actual trial had not begun and the original jury venire was still present in the courtroom because juror Ball's disability became evident just moments after the jury had been sworn. Because no alternate jurors were available to replace juror Ball, the court took advantage of the presence of the venire and sought to replace juror Ball with the next person on the jury list. This was a logical approach because the venire persons had already been found to be qualified and had survived the voir dire without challenge for cause. Indeed, both parties seemed to consent to the decision to select the replacement juror in this manner. We hold that if no alternate jurors have been appointed to hear a matter and the actual trial has not begun, it is appropriate for a court to replace a juror who must be dismissed after the jury is sworn with the next person on the jury list if the court first obtains the consent of all parties to the action.

Initially, the court could reasonably have believed that it had elicited the consent of both parties to replace juror Ball with a member of the original jury pool. When the court first asked juror Ball if she would like to be excused the court said: "there is no objection [from] counsel, I assume." Neither side stated an objection. Later, the court asked: "There is no objection for counsel selecting another juror?" Defense counsel answered: "No, Your Honor." Although the judge did not explain how he was going to select a replacement juror, it

should have been apparent to both parties that the judge would select some member of the original jury pool to replace juror Ball because no alternate jurors had been appointed and because the venire was still in the room. Furthermore, there was no objection from either party when the clerk called the name of the next person on the jury list in response to the court's statement: "All right. We will go ahead and select one, go on to the next one."

Defense counsel indicated his belief that, in selecting a replacement juror from the venire, the court was in effect selecting an alternate juror. Defense counsel therefore expected to get at least one more peremptory challenge because additional peremptory challenges are available when selecting alternate jurors. Thus, it quickly became clear to the court that defense counsel's consent to having the disabled juror replaced by the next person on the jury list was conditioned upon the matter being treated as the selection of an alternate with the receipt of an additional peremptory challenge. When the court asked the next person on the jury list to be seated as juror number one before any discussion, examination or opportunity for challenge, defense counsel immediately asked to approach the bench and requested an additional challenge. When the judge denied defense counsel's request, counsel took exception to the ruling. Because defense counsel's consent to the impanelling of the next person on the jury list was based on the reasonable belief that he would receive another peremptory challenge and the court would not grant one, there was, in effect, no consent at all. Although defense counsel did not request a mistrial, without the consent of all parties to the selection of a new juror, the court was bound to grant a mistrial on its own motion and to begin the jury selection process anew. The only alternative would have been for the court to obtain the parties' agreement to proceed with a diminished number of jurors.

We hold that a court may not substitute a sworn juror with a new, non-alternate juror without the express consent of all parties. Defense counsel believed that the court was selecting

an alternate juror, and defense counsel's consent was conditioned upon the receipt of the additional peremptory challenges that are statutorily mandated when an alternate juror is seated. Because the trial court refused to grant the defense any additional peremptory challenges, it is clear that, in effect, defense counsel did not consent to the substitution at all. Unless the parties had agreed to proceed with only eleven jurors, the court had no choice but to declare a mistrial and to impanel a new jury.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THIS CASE TO THE CIRCUIT COURT FOR WICOMICO COUNTY FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY WICOMICO COUNTY.*