749 A.2d 273

**Gregory BENJAMIN**

v.

**STATE of Maryland.**

**No. 6965, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

April 7, 2000.

Marc E. Mandel (Law Student pursuant to Rule 16)(Stephen E. Harris, Public Defender and Sherrie B. Glasser, Assistant Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for appellee.

Argued before WENNER, HOLLANDER and KENNEY, JJ.

WENNER, Judge.

Appellant, Gregory Benjamin, was convicted by a jury in the Circuit Court for Baltimore City of second degree assault and related charges. After he was sentenced to a term of twenty-five years without parole for the use of a handgun

during the commission of a crime of violence conviction, to a term of ten consecutive years for the second degree assault conviction, to an additional term of five consecutive years for the possession of a firearm after being convicted of a crime of violence conviction, and to a concurrent term of five years for the reckless endangerment conviction,[1] he noted this appeal. On appeal, we are presented with the following question:

> Did the trial judge err in refusing to grant a mistrial in light of the apparent incompetence or unwillingness of a juror to effectively participate in jury deliberations, dismissing that juror, and subsequently allowing that juror to participate in jury deliberations upon discovering that no alternate jurors were available?

We shall answer "yes," and reverse the judgments of the circuit court.

## Facts

As the underlying facts are irrelevant to the issue presented by appellant, we shall not recount them. The only issue before us involves the trial court's encounter with an uncooperative juror during jury deliberations.

At the close of evidence and oral argument, the trial court instructed the jury and dismissed the alternate juror. The jury then retired to begin deliberations. In approximately three hours, a note containing three questions was received from the jury. The trial court answered two of them, but did not answer the question of what would happen if the jury was unable to reach a decision on all counts. When the jury was directed to return to its deliberations, Juror # 3 was asked to remain in the court room. In the presence of defense counsel and the defendant, the following exchange ensued:

*The Court:* Ms. Watkins?

---

1. Appellant was also convicted of possession of a handgun, which was merged into his conviction for the use of a handgun during a crime of violence. He was acquitted of attempted first degree murder, attempted second degree murder, and attempted armed robbery. On the charge of first degree assault, there was a hung jury.

*Juror # 3:* Um-hum.

*The Court:* I've just noticed over this little bit of time that you don't seem comfortable or happy. You seem a little angry. I mean, I've been a judge for 15 years and you've got to sense or see things pretty quickly, even by body language. And you were saying things just as you came out and I overheard—I'm not quite sure what you said, but it didn't sound like you were a happy camper.

. . .

*Juror # 3:* I asked her to write down to ask you could one of us leave, you know, could one of us just leave. I mean, can we leave? I mean, can I leave?

*The Court:* Well, you have to tell me why you want to leave?

*Juror # 3:* Because they're not sticking to the issue here, to me. I think if they stick to the issue, what we are supposed to, maybe we can come to some kind of agreement. They just don't want to—

*The Court:* Okay. Because you have 11, if you have 11 jurors who think they are sticking to the issue—

*Juror # 3:* They're not.

*The Court:* But if 11 think they are and one thinks they're not, would that tell you something?

*Juror # 3:* If we were sticking to the issue, it wouldn't take that long, don't you think so?

*The Court:* Well, I think the question is whether—

*Juror # 3:* All right. I'll stay.

*The Court:* Just a minute. I'm not trying to twist your arm to stay. That would be equally wrong. Okay? The question is whether, if you feel that you're not able to reason with them and listen to them, not to surrender yourself to them, but to listen to them, that's a serious matter because it really would thwart the jury process. It would be the same as if a judge were to come out and the lawyers were all sitting there ready to argue their case and the judge said,

"I'm just not going to listen to you. I've made up my mind."

*Juror # 3:* You know why I ain't listening to them? Because they don't listen to me. When I say something, they don't listen to me.

*The Court:* If I did that, then I would be wrong, and if you did that, you would be wrong. And judges sometimes have to sit in groups of judges, too. They sit on what we call panels and we basically—

*Defense Attorney:* Your Honor, I don't mean to interject, but—

*The Court:* I know where I am. So I want you to give some thought to it and I should tell you what I will tell the entire jury panel, what I did not say that I meant to say about one of the questions here, "What happens if we can't reach a decision on all counts?" I think I won't continue with that until I've talked to the lawyers about that.

Do you want to just go over and have a seat there and just think about what I've said? Would you mind sitting way at the end there just so we don't overhear one another and we don't bother you in your thinking?

*Prosecutor:* Judge, my suggestion is just get her back in and try to start deliberating again.

*The Court:* But there is certainly precedent for excusing jurors who are not cooperating in the jury process and I have no hesitation in doing that.

*Defense Attorney:* Well—

*The Court:* I understand your position and I understand you'll take exception to it because you're going to deduce what her position is.

*Defense Attorney:* Well, I'm not sure—see, my problem with this whole conversation is I'm not sure that we understand what her problem is. I don't think its that she's not participating. She's come to a decision one way or the other, which she is entitled to.

*The Court:* No, she didn't say that. She said, "They're not listening to me. Why should I listen to them?" I deduce from that that she's not listening to them.

*Defense Attorney:* Well, I think that we're treading on thin waters—thin ice when we say, you know, "The 11 think this and so maybe you should listen to them" because maybe she's not. I mean, she could be whatever. I don't know whether she is for the State or for the defense.

*The Court:* With your permission, the question was put to the forelady who made it very clear that it was one person and there is no doubt who it is. So that's not even an issue and, of course, there is nothing morally or legally or technically wrong with one person reaching a decision different from 11.

*Defense Attorney:* That's right.

*The Court:* But it's not been told to them yet, by the way, well let me finish that thought. There's nothing wrong with one person being different from the other 11, but what is wrong and what I will not accept is a juror who is simply not participating in the process. That is not going to be acceptable to me, I don't care what side of the fence she is on.

*Defense Attorney:* But I don't think we know that.

*The Court:* I think we know it because the forelady said it and she has said it, too. I don't know what better evidence there is than the very two people who are, in effect, saying the same thing.

But let me go on to chapter two of this while we're all here. I have not fully answered the question about "What happens if we cannot reach a decision on all counts?" I really didn't emphasize—meaning that maybe they have a decision on some counts.

*Defense Attorney:* Well, I thought the problem was one through six. Maybe that's why I thought the problem was—

*The Court:* Well, that's a fair comment to make. I didn't read it that way. Well, I don't mind—I'll bring them back

and talk about that. I didn't say something that's important, which is a mistrial.

*Defense Attorney:* Right.

*The Court:* All right. Let me bring them back.

Juror number three, do you have any additional thoughts you want to share with us before we bring the jury back in?

*Juror # 3:* No.

*The Court:* What?

*Juror # 3:* No.

*The Court:* Do you want to stay and continue to serve, or do you want to be excused?

*Juror # 3:* I want to be excused.

*The Court:* I'm sorry. You better come up and talk to us because it is not on the record.

(Juror # 3 approached the bench.)

*Juror # 3:* I said, can I be excused?

*The Court:* And the reason?

*Defense Attorney:* Well, could I make a suggestion, Your Honor? Could you make the other announcement first and then give her the opportunity to decide whether she still wants to be excused?

*The Court:* Well, she's already answered that question.

*Juror # 3:* I do want to be excused.

*The Court:* I don't think there's any doubt about that. What is the reason for? Do you feel that you can or cannot participate with this jury?

*Juror # 3:* I'll participate if they stick to the issue.

*The Court:* But other than that answer, can you give me a different answer, one that also reflects your thinking, because that one doesn't help me very much.

*Juror # 3:* I don't have a reason why.

*The Court:* What?

*Juror # 3:* I don't really have a reason why.

*The Court:* You don't have a reason why?

*Juror # 3:* Why I want to leave. I just don't want to be with them.

*The Court:* You don't want to be with them?

*Juror # 3:* No.

*The Court:* You're having a hard time consulting with them and talking with them about the facts?

*Juror # 3:* I'm not saying anything. It's not me, it's them.

*The Court:* "Them" being all the other 11?

*Juror # 3:* I can't speak for the rest of them. You have to ask them.

*The Court:* Well, when you say "them," you mean the jurors in the jury room now, of which there are 11?

*Juror # 3:* You have to ask them. I can only speak for myself.

*The Court:* How would they tell me why you're having— why you're uncomfortable on this jury? I think only you can tell us that.

*Juror # 3:* I'm uncomfortable because they don't want you checking anything and instead of focusing on what we are supposed to be focusing on. I mean, maybe it will help us get out of here. That's how I look at it. I want to do what we've got to do so I can get out of here.

At the conclusion of this exchange, the jury returned to the courtroom and the final question posed by the note was answered. The jury was then directed to return to its deliberations, but Juror # 3 was again asked to remain in the courtroom. Following the jury's departure, another exchange ensued:

*The Court:* Now, having heard what I just said, does that influence your thinking?

*Juror # 3:* There's nothing wrong with my thinking.

*The Court:* No, I didn't mean there is anything wrong with it. I'm saying if it makes any difference to you.

*Juror # 3:* Yeah, if it makes any difference, you know. If they do like you say, I mean, there shouldn't be no problem.

*The Court:* What did I just say that—

*Juror # 3:* You said if we can come to some kind of agreement on a couple of them, not all of them, but some of them. That's fine. But I bet they didn't.

*The Court:* But you bet they didn't?

*Juror # 3:* Um-hum. Okay. That's fine.

*The Court:* So now with that clarification, do you want to continue on this jury and continue—you're saying "no"?

*Juror # 3:* No, I don't but ain't no way I can get out of it, is there?

*The Court:* Yes, by my excusing you.

*Juror # 3:* Well, can you excuse me, please?

*The Court:* If I felt that you were not going to—if I felt that you weren't comfortable with this jury in the way that I've asked you to perform your duty, which is to be part of—you don't have to be best friends, but be part of a process where you're listening to one another and you're open to the views of other people, if I felt you couldn't do that—and no one is wagging a finger at you like you're a bad person. It's only a question of your mental attitude.

All of us have been in situations where we felt we were not able to really be part of the process because of all sorts of reasons and it is not that unusual. If that is your state of mind, you see, because if that is your state of mind and you tell me that and you feel you can't be part of this jury, is what it amounts to, then I'm going to have to honor that, but I can't put words in your mouth and I can't say, without you're saying it, that you can't participate. I can't say that.

There's nothing wrong with—I mean if there are differences, that's part of the jury process and no juror is required to be in lock step with everybody else, but as they march down that road to a decision, they do march down together and they are listening to one another talk about the evidence and the law, and they're listening to the people express their opinions and they're open to why they have those opinions and they wonder if this is something that should influence their decision, but they don't surrender their convictions either without having that information

unless the change is caused by an intelligent process of your own, which comes about after you've listened to other people, if it comes about at all.

That's the process I'm talking about, and if you're not able or willing to participate in the process that way, then you would be excused, but only you can tell me if you can or cannot.

*Juror # 3:* What your saying, if I can sit down and listen to them? I mean, but why—

*The Court:* Well, they listen to you, too.

*Juror # 3:* They ain't listening to me, because I already gave them my verdict. This is, like, we got the—okay? We wrote down the numbers of it and we just put whatever, right? They got mine. It's them. And I ain't changing my mind. That's all to it.

*The Court:* It's not a question about you changing your mind.

*Juror # 3:* Well, I have nothing else to say. They got mine. It's them. You need to be saying that to them that's in there chit-chatting.

*The Court:* Ma'am, it's not a question of whether you change your mind on the decision in the case that you may have reached. The question is whether you'll change your mind by listening to other people. If you can't do that, then you will be excused.

*Juror # 3:* I can't listen to them.

*The Court:* Then you're excused.

At this juncture, although Juror # 3 retrieved her belongings, she remained in the courtroom. Defense counsel then stated, "I would make a motion for mistrial, Your Honor. I just think—well, I've never seen this done and I just feel that what I hear her saying and you heard her saying was two different things." Defense counsel believed Juror # 3 was the "hold out," but the trial court believed she was simply not willing to participate in the jury's deliberations. Although Juror # 3 had been dismissed, upon learning from the forelady that a verdict had been reached on several of the nine

counts, the trial court suggested that a partial verdict be accepted. Defense counsel responded, "I just think there's been too much communication with the jury, Your Honor. I'm going to renew my motion for [mistrial]. I think the case should be retried with a new jury, in all fairness to Mr. Benjamin." The motion was denied, and the clerk was directed to recall the previously dismissed alternate juror. On learning that the alternate could not be reached, Juror # 3 was reseated and directed to join in the jury's deliberations, and she did so.[2]

Approximately one half hour later, the jury reported that while it was deadlocked on four counts, it had reached a verdict on the remaining counts. On receiving this information, the trial court replied, "if you spend just a little more time, you may end up breaking the deadlock on the other counts," and directed the jury to return on the following morning and resume its deliberations. At this point, Juror # 3 again asked to be excused, and the trial court responded that she could not. As the jurors were departing, the trial court again had Juror # 3 remain. Before beginning a conversation with Juror # 3, the trial court said to both attorneys and the defendant:

I have been a judge for 15 years and I've been in drug court. I really do think she's on drugs, but, of course, I would think they would have worn off by now. I mean, it's 5:00, ten after 5:00. I do see symptoms. I don't mean that they're clear and unambiguous, but I did want to ask her. I'm worried about what she'll do tomorrow. That's why I'm asking.

. . .

. . . I mean, I see the symptoms. She acts very—she acts bizarrely. She's talking out loud to the forelady.

The trial court then conversed with Juror # 3:

*The Court:* I think that I'm concerned about tomorrow. I don't want you to let me down.

---

2. The trial judge spoke with Juror # 3, dismissed her, tried to recall the alternate, and reseated Juror # 3, all within seventeen minutes.

*Juror # 3:* I'll be here. I was just letting them know tomorrow is Friday. I ain't trying to stay all day. Friday is my day.

*The Court:* Do you work ma'am?

*Juror # 3:* No, I do not. No, I'm unemployed.

*The Court:* And you've been unemployed for how long?

*Juror # 3:* About four years now.

*The Court:* And do you have children?

*Juror # 3:* Yeah, 26 and 23.

*The Court:* What?

*Juror # 3:* 26, 23

*The Court:* And do they live in your home with you?

*Juror # 3:* No they don't. I live by myself. My daughter live next door, though. She have her own place.

*The Court:* And if you don't mind my asking this, is your income based upon—

*Juror # 3:* I don't have no income. I have renters in my house. That's how I pay my bills.

*The Court:* Okay. All right. And I was trying to find out—

*Juror # 3:* It's nothing.

*The Court:* I understand. I try to ask jurors, too, if they're under some stress, do you have any medications that you take?

*Juror # 3:* There's nothing wrong with me.

*The Court:* No, but some people take medication.

*Juror # 3:* I don't take no medicine.

*The Court:* What?

*Juror # 3:* No, there's nothing wrong with me.

*The Court:* Okay. All right. Well, it's been a pleasure. I think you're developing, from what I can tell by talking to you, I get a sense that you're relaxing a little bit and you're more willing to—

*Juror # 3:* Because I thought we was getting out of here today, but now we got to come back. I was just letting them know tomorrow is Friday. I ain't looking forward to

coming here tomorrow. They should go home and think about it and come back? They should have had their little decision and we should be right back out that door.

*The Court:* Okay. But it is not "they." See you're part of the "they."

*Juror # 3:* Well, they got mine. I ain't changing mine. That's all to it. They got mine. I'm just not changing it.

*The Court:* But you are listening to the others, aren't you?

  *Juror # 3:* Yes, I am.

*The Court:* And you're willing to—

*Juror # 3:* They're doing a little bit better. I mean, we got this far.

*The Court:* Okay. And you're willing to be open to what they're saying?

*Juror # 3:* Yes.

*The Court:* And suppose what they say—some or more of them say does cause you to rethink your position?

*Juror # 3:* I'm not. I don't care what they say.

*The Court:* Well, then, see, you keep sounding like you're not listening.

*Juror # 3:* I am listening, but I'm not changing my mind.

*The Court:* See, I'm listening to you. I'm listening to you. Suppose I said, "Well, I'm not going to change my mind about you. I'm just not going to listen to what you say." Wouldn't you be a little upset?

*Juror # 3:* I'm upset now because you won't let me take off tomorrow. Now I got to come in here. You ain't going to change your mind about that.

*The Court:* Well, the other 11 have to come back in, too. They don't want to come back either.

*Juror # 3:* Okay. I'll listen.

*The Court:* And be prepared to—

*Juror # 3:* But I had did that. I even changed mine. They still couldn't get it together and I changed it back the way I wanted it. I had even did everything.

*The Court:* Well, I don't want to get into the details.

*Juror # 3:* Well, I had tried everything. I mean, they're getting a little bit better now since you talked to them.

*The Court:* And would they say the same thing about you? Are you getting a little better, too? If I asked them—

Juror # 3: Yeah, you can ask them.

*The Court:* And they would probably—

*Juror # 3:* I don't say nothing to them. I'm sitting there minding my business, eating my peanuts, and looking out the window and straightening up.

*The Court:* All right. Well, I do think I want you to think about it overnight, as I've asked them to think about it overnight. I'm not isolating you.

*Juror # 3:* Okay.

*The Court:* And I want you to think about what I've said, which is when you come back tomorrow, be prepared to listen to them. I'm not asking you to change your convictions, but be sure that your convictions are based upon reasons that you've thought through and that they're influenced—not influenced, but informed by what other people say, too, because, as I said, you may have missed something that they picked up, or sometimes people just have a perspective that is important to listen to.

*Juror # 3:* Okay.

The jury returned the following morning and resumed its deliberations. A short time later, a note was received from Juror # 3. The note said: "I would appreciate it if you, the Judge, would let me leave for today. This in here is very frustrating ... I can't take no more." The trial court answered, "The answer must be no. Please work with this jury." Later that morning, the jury returned a verdict on eight of the nine counts. During numerous discussions with defense counsel and the trial court following each conversations with Juror # 3, defense counsel requested a new trial, on the grounds that not only had Juror # 3 been separated from the jury during its deliberations, but that the trial court had

communicated excessively with Juror # 3. In addition, appellant contends Juror # 3 hung the jury.

According to the trial transcript, the deliberations had continued in excess of six hours, and Juror # 3 was absent for more than thirty minutes of that time.

## Discussion

### I.

■ According to appellant, his motion for a mistrial should have been granted because, during deliberations, the trial court believed Juror # 3 was on drugs, incompetent, unwilling to participate in the jury's deliberations, and had missed a portion of the deliberations. We agree.

■ "[A] request for a mistrial in a criminal case is addressed to the sound discretion of the trial court[.]" *Wright v. State*, 312 Md. 648, 654, 541 A.2d 988 (1988).

It has ... been repeatedly held that "a trial judge shall declare a mistrial only under extraordinary circumstances and where there is a manifest necessity to do so." *Wilhelm v. State*, 272 Md. 404, 429, 326 A.2d 707 (1974); *Russell v. State*, 69 Md.App. 554, 562, 518 A.2d 1081 (1987). The record must compellingly demonstrate "clear and egregious prejudice to the defendant" to warrant such a drastic measure. *Leak v. State*, 84 Md.App. 353, 358, 579 A.2d 788 (1990). *See also Lusby v. State*, 217 Md. 191, 195, 141 A.2d 893 (1958). Because a trial judge is in the best position to evaluate whether or not a defendant's right to an impartial jury has been compromised, an appellate court will not disturb the trial court's decision on a motion for a mistrial or a new trial absent a clear abuse of discretion. *Wright v. State*, 312 Md. 648, 654, 541 A.2d 988 (1988); *Hunt v. State*, 312 Md. 494, 500–01, 540 A.2d 1125 (1988); *Wilhelm v. State*, 272 Md. at 429, 326 A.2d 707.

*Allen v. State*, 89 Md.App. 25, 42–43, 597 A.2d 489 (1992).

As we have noted, appellant's motions for a mistrial involved the trial court's extensive discussions with Juror # 3 during deliberations. While it is not unusual for a juror to be

dismissed, for cause or for inability to continue, most involve a seated juror being replaced by a duly selected alternate. *Hayes v. State,* 355 Md. 615, 735 A.2d 1109 (1999); *Pollitt v. State,* 344 Md. 318, 686 A.2d 629 (1996); *State v. Cook,* 338 Md. 598, 659 A.2d 1313 (1995); *Stokes v. State,* 72 Md.App. 673, 532 A.2d 189 (1987).

In the instant case, however, the trial court became aware of the problem with Juror # 3 after deliberations had begun, and the alternate had been dismissed. After questioning Juror # 3, the court believed she was not only unwilling to participate, but may have been "on drugs." Although Juror # 3 was dismissed, she was reseated in order for a jury of twelve to return a verdict, after defense counsel refused to accept a verdict from a jury of less than twelve. As we have noted, the jury continued to deliberate during the trial court's conversations with Juror # 3. Not only is this situation unique, we have been unable to uncover a reported case in which a juror was dismissed, then reseated during deliberations. Hence, this is a case of first impression. For guidance, we shall review several cases involving the dismissal of a sworn juror. In *Pollitt,* 344 Md. at 324–25, 686 A.2d 629, the Court of Appeals explained:

> When such a situation arises in a criminal case, as here, courts commonly proceed in one of three ways. First, the court can declare a mistrial. Maryland Code (1957, 1996 Repl.Vol.) Article 27, § 594; e.g. *State v. Gorwell,* 339 Md. 203, 217, 661 A.2d 718, 725 (1995)("The loss of a juror due to illness or other proper cause 'justifies a discharge of a jury and declaring a mistrial.'") (quoting *Reemsnyder v. State,* 46 Md.App. 249, 256, 416 A.2d 767, 771, *cert. denied,* 288 Md. 741 (1980)) ... The court can also remove the juror and, with the consent of both parties, proceed with only eleven jurors. Md. Rule 4–311(b) ...
>
> Finally, the court can remove the juror and replace him or her with an alternate juror.

In *Pollitt,* a juror's "hearing impairment did not become evident until immediately after the jury had been sworn." 344

Md. at 322, 686 A.2d 629. As the original jury venire was still present in the courtroom and no alternate juror was available, "the court took advantage of the venire and sought to replace juror Ball with the next person on the jury list." *Id.* at 325, 686 A.2d 629. Since defense counsel did not consent to the substitution, and the parties had not agreed to proceed with only eleven jurors, "the court had no choice but to declare a mistrial and to impanel a new jury." *Id.* at 327, 686 A.2d 629.

In *Hayes, supra,* as in the case at hand, a problem with a juror arose after the jury had retired to begin its deliberations and the alternates had been dismissed. There, the Court of Appeals declared it to be error for the trial court to substitute an alternate juror for a sworn juror after the jury had retired to deliberate. *Hayes,* 355 Md. at 635, 735 A.2d 1109. The Court relied · on Md. Rule 4–312(b)(3), which provides, in pertinent part:

> Any juror who, before the time the jury retires to consider its verdict, becomes or is found to be unable or disqualified to perform a juror's duty, shall be replaced by an alternate juror in the order of selection. An alternate juror who does not replace a juror shall be discharged when the jury retires to consider its verdict.

Applying Rule 4–312(b)(3), the Court explained:

> [W]e conclude that an alternate juror who remains qualified to serve may be substituted for a regular juror who is properly discharged, until such time as the jury enters the jury room to consider its verdict and closes the door. We view the closing of the door as marking the point at which the ability to substitute ends . . .

355 Md. at 635, 735 A.2d 1109. In *Gorwell, supra,* when at the request of the defendant, a juror was dismissed during deliberations, and the State would not agree to proceed with eleven jurors, the trial court declared a mistrial. 339 Md. at 205, 661 A.2d 718. On appeal, the Court said "there was a manifest necessity for the declaration of a mistrial." *Id.*

Turning to the case at hand, we shall examine the options available to the trial court under such circumstances. First, the alternate juror had been excused and had departed and

thus could not replace Juror # 3. Not only had deliberations begun, they had been underway for some period of time. *See Hayes, supra.* Second, defense counsel would not agree to proceed with eleven jurors. Accordingly, there was a manifest necessity to declare a mistrial. *See Pollitt, supra* and *Gorwell, supra.*

While we are reluctant to disturb the denial of a motion for mistrial, we are here faced with rather unusual circumstances. After several conversations with Juror # 3, while the jury continued its deliberations, the trial court determined that Juror # 3 was possibly on drugs and was unwilling to participate in the deliberations. Nonetheless, Juror # 3 was reseated when the trial court learned that a partial verdict had been reached, although Juror # 3 had not participated in the entire deliberations.

Our purpose for including several lengthy excerpts from the trial transcript is to demonstrate the extent to which the trial court sought to avoid a mistrial, and to demonstrate the extent of the trial court's communications with Juror # 3, while the jury, in her absence, continued to deliberate. From this, it is obvious that Juror # 3 was not only unwilling to participate in the deliberations, she repeatedly asked to be excused. On one occasion, Juror # 3 said she would do whatever it would take to be able to leave. It appears, however, that on several occasions Juror # 3 was for all purposes coerced into rejoining the jury's deliberations. Moreover, during her third conversation with the trial court, Juror # 3 explained that she was still not participating, but was told to think about it overnight and return the next morning.

In sum, it appears that Juror # 3's lack of participation in the jury's deliberations, her desire to be excused, and her absence from deliberations, deprived appellant of his right to a fair trial before an impartial jury. Thus, the trial court abused its discretion in declining to declare a mistrial.[3]

---

3. Although appellee does not believe the questions presented by appellant on appeal were preserved for our review, we disagree. We believe they were preserved by defense counsel's repeated requests for mistrial.

JUDGMENTS REVERSED; COSTS TO BE PAID BY
THE MAYOR AND COUNCIL OF BALTIMORE CITY.