961 A.2d 1131

**Steven Anthony POWELL**

**v.**

**STATE of Maryland.**

**No. 33, Sept. Term, 2008.**

Court of Appeals of Maryland.

Dec. 15, 2008.

Juan P. Reyes, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore) on brief, for Petitioner.

James E. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., Baltimore) on brief, for Respondent.

Argued Before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, JOHN C. ELDRIDGE (Retired, Specially Assigned) and IRMA S. RAKER (Retired, Specially Assigned), JJ.

GREENE, Judge.

In this case we must decide whether the Court of Special Appeals was correct in its interpretation and application of our decision in *Pollitt v. State*, 344 Md. 318, 686 A.2d 629 (1996).[1]

---

1. We granted Powell's petition for writ of certiorari, 405 Md. 63, 949 A.2d 651 (2008), which presents the following question:

 Did the Court of Special Appeals incorrectly interpret and apply this Court's holding in *Pollitt v. State*, 344 Md. 318, 686 A.2d 629 (1996) when it refused to hold that it was incumbent on the trial judge to declare a mistrial and impanel a new jury when a juror was dismissed for cause after the jury had been sworn, without any alternates available, and defense counsel did not consent to proceed with eleven jurors or with the selection of a new juror?

Steven Anthony Powell, petitioner, was charged with four counts of third-degree sexual offense. At his trial, Powell and the prosecutor selected a panel of twelve jurors and the court swore the jurors. Neither party requested alternate jurors and no alternate jurors were appointed. Soon thereafter, but before opening statements, one of the impanelled jurors, Juror 97, indicated to the court that he knew Powell and expressed concern that he could not be a fair and impartial juror. As a result of that revelation the court struck Juror 97 for cause. Powell and his attorney informed the court that Powell would not consent to a trial by jury consisting of only 11 jurors.

After a significant exchange between Powell's attorney and the prosecutor, the trial judge decided to replace Juror 97 with a member of the pool of potential jurors that remained in the courtroom and had not yet been dismissed. Powell's counsel explicitly refused to consent to this course of action and remarked that, "[t]his is going to be a mistrial." Despite Powell's lack of consent, he and the State proceeded to select a replacement juror pursuant to the court's instructions. Subsequently, the newly constituted jury convicted Powell. He appealed to the Court of Special Appeals on the ground that the trial court erred because it failed to declare a mistrial.

The intermediate appellate court rejected Powell's assertion and concluded that the trial judge did not err and was not required, as a matter of law, to declare a mistrial. We shall reverse of the judgment of the Court of Special Appeals. We conclude that the trial judge erred in failing to declare a mistrial when a previously impanelled juror was dismissed for cause, no alternates were appointed, and the defendant did not consent to proceeding with only 11 jurors or to the selection of a replacement juror.

## BACKGROUND

We adopt the facts as set forth by the Court of Special Appeals in its unreported opinion, *Powell v. State of Maryland,* No. 2079, Sept. Term, 2006, 178 Md.App. 754 (Feb. 27,

2008). The intermediate appellate court recited the facts as follows:

During voir dire, the court identified [Powell] and asked whether any member of the prospective jury panel knew him or any member of his immediate family. None of the venire responded affirmatively. After swearing the jury, the following transpired.

THE COURT: Juror number 97 is now in the box and he has indicated that he knows [Powell] and that he attended church with him for a time and the girlfriend. So—

THE STATE: The State would exercise a strike.

[POWELL'S] COUNSEL: Well the problem—

THE COURT: The problem is the jury has been—

[POWELL'S] COUNSEL: The jury is there and the problem is no alternates.

THE STATE: Well we have a whole (unintelligible for one word) of people here. Is there some reason this juror did not have that realization?

THE COURT: Well—

[POWELL'S] COUNSEL: I don't know what to do because we have no alternates and I'm not going to accept 11 [jurors]. I wouldn't advise my client to accept an 11 person verdict. I don't know where we are.

THE STATE: Leave him on.

[POWELL'S] COUNSEL: I don't want to leave him on. He knows my client. I mean I—even to [sic] begin to voir dire him, I think that it's a dangerous process.

THE STATE: Well explain to me why without—We have 30 other people sitting here in this courtroom we cannot pick an alternate?

[POWELL'S] COUNSEL: Because we picked the jury I think jeopardy is attached.

THE COURT: The problem is that we have picked a jury—

THE STATE: They have been sworn.

THE COURT: They have been sworn and I don't know that I have the ability to invade that process at this point in time. So-

[POWELL'S] COUNSEL: *It's going to wind up being a mistrial.*

THE STATE: Can we ask a law clerk to look into this because your Honor this case—We can't even continue it. I mean we're in the—

THE COURT: I am going to take a short recess and think about it a little bit. We'll have a comfort recess and we'll go from there.

[POWELL'S] COUNSEL: I go [sic] into the backroom and I'll talk to him again.

THE STATE: Your Honor, do we want them to stay here just in case?

THE COURT: For the moment.

\* \* \*

(Whereupon at 10:15 the court was in recess. At 10:30 a.m. court was reconvened and the following ensued out of the presence of the jury:)

THE COURT: [Powell's counsel] if you and your client would come up please. [The State]. Have a seat folks.

(Whereupon the defendant and both counsel approached the bench and the following ensued out of the hearing of the gallery:)

THE COURT: I am going to find out from the juror himself just exactly what the situation is with him and we'll go from there. Okay? Mr. Juror. (Juror 97 approached the bench). Juror number?

JUROR: 97.

THE COURT: 97. The bailiff has indicated that you know the defendant in this matter, is that correct?

JUROR 97: Yes sir.

THE COURT: How long have you known the defendant?

JUROR 97: I guess like six, seven months.

THE COURT: When did you realize today that you knew the defendant?

JUROR 97: When I looked in the audience and seen I think it's his girlfriend?

[POWELL]: Wife.

JUROR 97: His wife.

THE COURT: When I asked you some questions on voir dire at the beginning, when I asked if anybody knew the defendant you didn't answer yes.

JUROR 97: Because I knew her and then it came back to me that I knew him through her.

THE COURT: When did it come back to you?

JUROR 97: Back there.

THE COURT: When you got back to the jury room?

JUROR 97: Yeah.

THE COURT: That's when you realized you knew him and his wife.

JUROR 97: Yeah it's been, it's been a long time. It's been a while.

THE COURT: Okay. All right.

JUROR 97: Deal with a lot of people everyday at work so—

THE STATE: Work or church?

JUROR 97: Work.

THE STATE: Oh I thought you said church.

JUROR 97: It is church. I went with her to church. I know him through work.

THE STATE: Okay gotcha.

THE COURT: Because you know the defendant and because you know the wife of the defendant, considering all that, do you believe that you could decide this case solely upon the evidence presented? Could you be fair and impartial?

JUROR 97: Actually I could be fair and impartial, I choose not to do it.

THE COURT: That's not the choosing thing. The question is—

JUROR 97: No.

THE COURT:—can you listen to the testimony and decide the case solely upon the evidence?

JUROR 97: No.

THE COURT: You don't think you could be fair.

JUROR 97: No sir. No I'm not going to put myself in that predicament.

THE COURT: All right. [Powell's counsel], do you want to exercise a challenge of this juror?

[POWELL'S] COUNSEL: Could the juror step back and we discuss it?

THE COURT: Go back in the jury box. (Juror 97 returns to the jury box.)

[POWELL'S] COUNSEL: I don't want to waive—The problem is a lawyer accepts a panel then he waives any objections on appeal as to a defect in the jury. It's Boose versus State where there is (unintelligible for two words) people in the courtroom. So if I exercise a challenge, I don't want to be placed in a position that I am accepting the jury as it is or waiving my objection. My objection is we have a sworn jury of 12 people. *I would obviously not want a juror that could not be fair. And within that perimeter I will ask the [c]ourt to strike the juror but I don't want it construed that I am accepting an 11 person jury or a jury as—*

THE COURT: Well what I am going to do is I am going to excuse Juror number 97 from this panel. He has indicated that he could not be fair and impartial in this matter. He knows the defendant. He said it was when he got back in the jury room that he realized that he knew the defendant and not until that time. So to his credit he did tell us before actual opening statements began, so Juror number 97 is excused. Now what I am going to do since we still have the jurors out there and since people still have challenges they can use, I am going

to-we will pick another juror and swear them and go from there.

[POWELL'S] COUNSEL: Okay if I can place two things on the record. I stopped at a certain point using my challenges because of what was coming next and I only had one challenge left and the State, I believe, has two challenges. I'd have to look at my notes. But I stopped and accepted the panel because the panel as constituted is what I wanted and did not exercise anybody out of the box at that point in time. *So now I am placed in a position of having to proceed further with this panel when it was acceptable to my client and to not be able on the record to accept any jury as constituted through this process to preserve that issue for appeal.* So at the end, I'm not trying to be rude to the [c]ourt, but I have to—

THE COURT: I understand.

[POWELL'S] COUNSEL: *I cannot accept the panel ultimately in the end.*

THE STATE: Your Honor, I have three strikes left. I would give them to the defense.

THE COURT: This is an unusual situation we are faced with here today and in order to have a jury of 12, you will have—*The State has three strikes left, so the defendant will be accorded four additional challenges of the prospective jurors. All right? I mean that's my ruling.*

[POWELL'S] COUNSEL: *I appreciate your ruling and it's very kind of the [c]ourt to do that. The only thing I'm saying is I can't say all right because I have to keep this for appeal.*

THE COURT: I understand that you are trying to preserve your record for the appeal. I appreciate that but it's my goal to—

[POWELL'S] COUNSEL: I understand.

THE COURT:—do the best we can under the circumstances that we have. And I believe this is a fair, fairest way to proceed.

[POWELL'S] COUNSEL: Okay thank you.

THE STATE: Thank you your Honor.

(Whereupon the defendant and both counsel returned to trial tables and the following ensued in the hearing of the gallery:)

THE COURT: Juror number 97 you are excused. Would you bring the jurors in please?

[POWELL'S] COUNSEL: May I make a suggestion? May we approach?

THE COURT: Yes sir.

[POWELL'S] COUNSEL: Without waiver or objection, can we pick one alternate? I don't want anything to happen again.

THE COURT: No I'm not going to do that.

\* \* \*

THE COURT: Madam Clerk, if you would call four people please.

CLERK: ... Juror number four please step forward.

THE STATE: Please seat the juror.

[POWELL'S] COUNSEL: Acceptable.

THE COURT: Does the defense have any additional strikes that the defense would like to—

[POWELL' S] COUNSEL: I hate to—May we approach so I can put something on the record?

THE COURT: Come on up.

\* \* \*

[POWELL'S] COUNSEL: *I'll be honest with the [C]ourt I have done this a long time, I don't know if by using any of these extra challenges if I am waiving my client's objection. I hate to hear this back from—*

THE COURT: I'm actually—You have accepted this jury that is going in. I think your objections are covered on the record and I am not going to—The jury, the other 11 people, they have already been sworn, so I will not let you

go and invade that panel at this point. All right? All right.

(emphasis added).

As noted above, a replacement juror was impanelled and ultimately, the jury convicted Powell of four counts of third-degree sexual offense. When reviewing Powell's appeal, the intermediate appellate court explained that pursuant to *Pollitt v. State*, 344 Md. 318, 686 A.2d 629 (1996), the trial court could have proceeded in one of the three following ways: (1) by declaring a mistrial, (2) by removing the juror and with the consent of both parties, proceeding with only 11 jurors, or (3) by removing the juror and replacing him or her with an alternate juror. The Court of Special Appeals held that the trial court was not required to declare a mistrial in this case, because Powell did not explicitly request a mistrial and participated in the selection of a replacement juror despite stating that he could not "accept the panel ultimately in the end." The intermediate appellate court characterized Powell's failure to request a mistrial as "tactical," noting that Powell knew that a mistrial was the only remaining option if he refused to consent to an 11 panel jury or to the selection of a replacement juror, yet never requested that course of action. Concluding that Powell "can not have it both ways," the Court of Special Appeals held that the trial court did not err.

## DISCUSSION

■ The State contends that the intermediate appellate court's conclusion that "Powell's refusal to consent to either an 11 member jury or the selection of a new juror from the remaining members of the venire, while at the same time 'participat[ing] in the selection of a replacement juror' all the while tactically objecting to the ultimate composition of the jury to reserve the issue for appellate review[,] caused Powell to wrongfully 'have it both ways.'" In other words, the State maintains that Powell should have requested a mistrial if he deemed that the only appropriate way of proceeding after the trial court excused Juror 97.

Moreover, the State argues that our decision in *Pollitt* did not require the trial court to declare a mistrial under the circumstances of this case. The State characterizes language in the *Pollitt* opinion that indicates that a trial court "must" declare a mistrial when a party refuses to consent to an 11 member panel or to the selection of a replacement juror, as dicta. In making these contentions, the State emphasizes that a mistrial is an "extreme sanction, and the decision of whether to grant a mistrial is vested in the trial judge, who is in the best position to weigh the danger of prejudice in the context of the entire case."

Powell asserts that the Court of Special Appeals incorrectly interpreted and applied *Pollitt.* Powell contends that *Pollitt* clearly delineates the exact procedure to be followed under the circumstances of this case and required the trial court to declare a mistrial on its own motion and independent of any request from counsel.

We agree with Powell that *Pollitt* clearly sets forth the procedure for a trial court to follow under the circumstances of this case; thus, the Circuit Court erred by failing to declare a mistrial. In *Pollitt,* a juror, with a hearing impediment, was impanelled but was later excused because of that impediment. 344 Md. at 320, 686 A.2d at 630. No alternate juror had been selected, but the original venire remained in the courtroom. *Id.* The parties agreed to move forward by impanelling a replacement juror from the original venire. *Id.* The defendant, believing that he was entitled to an additional peremptory challenge when selecting the replacement juror, consented to the procedure. *Pollitt,* 344 Md. at 320–21, 686 A.2d at 630. It soon became apparent that the defendant would not receive an additional peremptory challenge. *Id.* Defendant's counsel approached the bench and specifically requested the additional challenge. *Id.* The court refused the request and the defendant excepted to that ruling. *Id.*

Upon our review of the case, we stated:

Maryland courts are often confronted with the need to excuse a juror after the jury has been sworn. When such

a situation arises in a criminal case, as here, courts commonly proceed in one of three ways. First, the court can declare a mistrial. . . . The court can also remove the juror and, with the consent of both parties proceed with only eleven jurors. . . . Finally, the court can remove the juror and replace him or her with an alternate juror. In the present case, however, neither party had requested alternates, and none had been appointed. Maryland Rule 4-312(b)(3) makes it clear that, in a non-capital case, whether to appoint alternate jurors is within the discretion of the trial court.

\* \* \*

Under the unique facts of this case, the actual trial had not begun and the original jury venire was still present in the courtroom. . . . Because no alternate jurors were available . . . the court took advantage of the presence of the venire and sought to replace [the juror] with the next person on the jury list.

*Pollitt,* 344 Md. at 324–25, 686 A.2d at 632 (citations omitted). We then held that "if no alternate jurors have been appointed to hear a matter and the actual trial has not begun, it is appropriate for a court to replace a juror who must be dismissed after the jury is sworn with the next person on the jury list *if the court first obtains the consent of all parties to the action.*" *Pollitt,* 344 Md. at 325, 686 A.2d at 632 (emphasis added).

Ultimately, we remanded Pollitt's case to the circuit court for a new trial because his counsel did not consent to the replacement juror. *Pollitt,* 344 Md. at 326–27, 686 A.2d at 633. We reasoned:

Because defense counsel's consent to the impanelling of the next person on the jury list was based on the reasonable belief that he would receive another peremptory challenge and the court would not grant one, there was, in effect, no consent at all.

* * *

Although defense counsel did not request a mistrial, without the consent of all parties to the selection of a new juror, the court was bound to grant a mistrial on its own motion and to begin the jury selection process anew. The only alternate would have been for the court to obtain the parties' agreement to proceed with a diminished number of jurors.

*Pollitt,* 344 Md. at 326, 686 A.2d at 633.

A criminal defendant has a fundamental right to a fair trial by an impartial jury. U.S. CONST. amend. VI; *see also* Articles 5, 21, 23, and 24 of the Maryland Declaration of Rights. The defendant also has the right to participate in the selection of a jury that the defendant "might believe to be favorably disposed to his fate." *U.S. v. Jorn,* 400 U.S. 470, 486, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971). Maryland law provides that a jury in a criminal case shall consist of twelve persons. Maryland Rule 4–311(b); *Stokes v. State,* 379 Md. 618, 627–28, 843 A.2d 64, 69 (2004) ("While trial by jury of twelve is not mandated by the United States Constitution, the Maryland Constitution and the Maryland Rules require a jury by twelve in criminal cases unless a lesser number is agreeable to both the State and the defendant."). Moreover, Maryland Rule 4–312(b)(3) provides that once a jury is selected, "the court may direct that one or more jurors be called and impanelled to sit as alternate jurors." If necessary, the alternate juror can replace, "[a]ny juror who, before the time the jury retires to consider its verdict, becomes or is found to be unable or disqualified to perform a juror's duty." Maryland Rule 4–312(b)(3); *see also Hayes v. State,* 355 Md. 615, 635, 735 A.2d 1109, 1120 (1999) ("[A]n alternate juror who remains qualified to serve may be substituted for a regular juror who is properly discharged, until such time as the jury enters the jury room to consider its verdict and closes the door.").

Although, generally, a trial judge has discretion to remove a juror and replace that juror with an alternate, *State v. Cook,* 338 Md. 598, 607, 659 A.2d 1313, 1318 (1995), the trial

judge does not have discretion to replace a juror when no alternate juror has been drawn. *Pollitt,* 344 Md. at 326, 686 A.2d at 633. Pursuant to Maryland Rule 4–312(b)(1), "[a]n alternate juror shall be drawn in the same manner . . . and take the same oath as a [regular] juror." In other words, under the Maryland Rules of procedure, jurors may be replaced only with alternate jurors, unless the parties agree otherwise.

■ In the instant case, the trial judge elected to proceed without drawing alternate jurors. When a problem arose that required the removal of Juror 97, the trial judge directed the parties to draw a replacement juror from the panel that remained in the courtroom. Because the jury had already been constituted and sworn, the time for selecting alternates had passed. As we explained in *Pollitt,* in a criminal case, when a juror needs to be excused after the jury has been sworn, the court may proceed in one of four ways: (1) by declaring a mistrial; (2) with the consent of both parties, proceeding with only 11 jurors; (3) replacing the juror with an alternate juror; or (4) if no alternates have been drawn, substituting a new, non-alternate juror, provided both parties have given express consent. *Pollitt,* 344 Md. at 324–26, 686 A.2d at 632–33. Here, the defendant did not give express consent to either option (2) or (4). The judge could not satisfy option (3), because the decision was made not to draw an alternate; therefore, the judge's only option was to declare a mistrial.

Accordingly, we reject the intermediate appellate court's conclusion that Powell wrongfully had it "both ways" by proceeding with the selection of a replacement juror while simultaneously expressing that he did not consent to the procedure. It was clear that the trial judge intended to go forward with the trial by drawing the replacement juror from the pool present in the courtroom at the time. Powell proceeded pursuant to the trial court's instruction, yet, stated on four occasions that he could not consent to the selection of a replacement juror. In our view, Powell's act of exercising his

right to refuse to consent to the replacement, while also obeying the trial court's decision to proceed, was not wrongful.

 In addition, Powell was not required to expressly request a mistrial.[2] We note that a mistrial is generally an extraordinary remedy and that, under most circumstances, the trial judge has considerable discretion regarding when to invoke it. *Cooley v. State*, 385 Md. 165, 173, 867 A.2d 1065, 1069 (2005). A trial court must declare a mistrial, however, when, as here, it is the remedy "necessary to serve the ends of justice." *Id.; Klauenberg v. State*, 355 Md. 528, 555, 735 A.2d 1061, 1075 (1999) (citations omitted).

 In *Pollitt*, we specifically concluded that in a situation of this sort, where there is no alternate juror, and a party refuses to consent to an 11 member panel or to selecting a replacement juror from the original venire, the trial judge "*ha[s] no choice* but to declare a mistrial and to impanel a[new] jury." 344 Md. at 327, 686 A.2d at 633 (emphasis added); *Booze v. State*, 347 Md. 51, 68, 698 A.2d 1087, 1095 (1997) (explaining that under *Pollitt*, when a juror is excused and no alternate has been drawn, and the parties do not consent to an 11 member panel or to the selection of a replacement juror, "the court's only effective option [i]s to declare a mistrial"); *see also State v. Gorwell*, 339 Md. 203, 217, 661 A.2d 718, 725 (1995) (indicating there was "manifest necessity" for the trial judge to declare a mistrial when a previously impanelled juror was dismissed for cause and one party refused to proceed with a panel of less than 12 jurors). Because Powell's counsel unambiguously refused to consent to an 11 panel jury or to the selection of a replacement juror, our decision in *Pollitt* required the trial court to declare a mistrial in this case. Failure to declare a mistrial under the circumstances is reversible error, as a matter of law.

2. As noted in the Background section of this opinion, although Powell's counsel did not specifically make a motion for a mistrial, he did state on the record that "this was going to wind up being a mistrial."

JUDGMENT OF THE COURT OF SPECIAL APPEALS
REVERSED; CASE REMANDED TO THAT COURT
WITH INSTRUCTIONS TO REVERSE THE JUDGMENT
OF THE CIRCUIT COURT FOR WASHINGTON COUN-
TY AND REMAND THE CASE TO THAT COURT FOR A
NEW TRIAL; RESPONDENT TO PAY THE COSTS IN
THIS COURT AND THE COURT OF SPECIAL AP-
PEALS.

Concurring and Dissenting Opinion by MURPHY, J.

I agree that the petitioner is entitled to a new trial, but do
not agree that the trial court erred in failing to *sua sponte*
declare a mistrial. In *Pollitt v. State*, 344 Md. 318, 686 A.2d
629 (1996), this Court was presented with the narrow issue of
whether, "when a juror is excused immediately after the jury
is sworn with no alternates, the trial judge may *sua sponte*
select a replacement juror without allowing the defendant an
additional peremptory challenge." *Id.* at 319, 686 A.2d at 629.
I agree with the holding in *Pollitt:* the trial court erred in
denying the petitioner's request for an additional peremptory
challenge. I am persuaded, however, that the *Pollitt* Court
did not have to opine that, "without the consent of all parties
to the selection of a new juror, the court was bound to grant a
mistrial on its own motion and to begin the jury selection
process anew." *Id.* at 326, 686 A.2d at 633. I would therefore
overrule *Pollitt* to the extent that it purported to "hold that a
court may not substitute a sworn juror with a new, non-
alternate juror without the express consent of all parties." *Id.*

In my opinion, although the trial court did not err in
resuming jury selection after granting additional peremptory
challenges to the petitioner, reversible error did occur when
the trial court prohibited petitioner's trial counsel from exer-
cising a peremptory challenge against any of "the other 11
[jurors], [on the ground that] they have already been sworn,
so I will not let you go and invade that panel at this point." I
am persuaded beyond a reasonable doubt, however, that if the
trial court granted a mistrial on its own motion, petitioner
would have moved for dismissal on the ground that a retrial is

barred by double jeopardy because the "pool of potential jurors that remained in the courtroom and had not yet been dismissed" provided a "reasonable alternative to the decision to declare a mistrial." *Hubbard v. State,* 395 Md. 73, 93, 909 A.2d 270, 282 (2006). There would be merit in that argument.